Ovig v. Morrison, 142 Wis. 243.

Ovig, Appellant, vs. Morrison and another, Respondents.

*February 24—March 15, 1910.*

*Adverse possession: Temporary absence: Extent of possession: Bad faith: Mistake of boundaries: Attempt to settle dispute: Presumptions: Divesting title of owner.*

1. After establishment of adverse possession of land a temporary absence of the invader, such as leaving the dwelling house thereon without an occupant, while endeavoring to secure a tenant, or other temporary absence not evincing any intention of abandonment, there being no interruption of the possession by entry of the true owner, or other disseisin, does not suspend the running of the statute against such owner.

2. Actual possession of a part of a tract of land under color of title extends by construction to the calls of the paper basis for the entry.

3. In case of adverse possession of a tract of land under color of title, and actual adverse possession of contiguous land in connection therewith, possession extends by construction to the calls of the paper basis for the entry under the ten-year statute of limitations, while the twenty-year statute applies to the possession beyond such calls.

4. Neither good faith, bad faith, nor mistake of boundaries affects the character of possession requisite to title by adverse possession.

5. The sole test of adverse holding under the statutes on the subject of title by adverse possession, is whether the true owner is actually disseised for the statutory period.

6. Adverse holding is not interrupted by the hostile possessor endeavoring to settle the disputed right to the premises so as to avoid litigation, or the status of his claim affected.

7. An offer by a person claiming title to land by adverse possession, after lapse of the period of limitation, does not affect the rights of such person.

8. The rule of the Code is that unexplained, exclusive, continuous occupancy of land under a chain of title for the full period requisite to title by adverse possession, extinguishes the presumption of occupancy in subordination to the right of the true owner and creates a presumption of holding during such period with all the characteristics of adverse possession, subject to be rebutted by proof to the contrary, but conclusive in the absence of such proof.

9. Continuous disseisin of the true owner of a tract of land by another, or others, in continuity under color of title for a period of ten years, or without such color for a period of twenty years, creates a disability in such owner to recover the land by judicial remedies and so divests him of title and vests it in his adversary, though there was, to his knowledge, no legitimate basis whatever for his adversary's claim during the statutory period.

[Syllabus by Marshall, J.]

APPEAL from a judgment of the circuit court for Eau Claire county: James O'Neill, Circuit Judge. *Affirmed.*

Action in ejectment. The defendants, among other things, pleaded title in defendant *Fannie H. Morrison* by adverse possession, under the twenty-year statute. There was proof that plaintiff had paper title to the south forty-six and one-fourth feet of the platted lot in question, but that her occupancy had only been up to the south side of a narrow strip of irregular width, averaging about four feet, sought to be recovered in this action. On the north side of that part of the lot occupied by plaintiff, for more than twenty years, there had existed a division fence and that part of the lot within the fence, including all the disputed strip, had been continuously occupied by the defendant *Fannie H. Morri-*

*son* and those under whom she claimed. More than twenty years prior to the commencement of the action said defendant's remote grantor owned the north part of the lot, claiming his south line to be the north line of the premises as occupied by plaintiff and her predecessors in title, and so claiming he located his dwelling house partly thereon, so that the north line as the plaintiff claims the same to be, passed through the south side of said house. Neither the person who built said house nor any one in the chain of title from him, intended to claim any further south than the true line, but the claim during the entire statutory period of twenty years has been that the fence aforesaid, recognized as a division fence, was on the line, or at least that no point of it was too far south. If such claim was not correct it was owing to a mistake of boundaries; claimant on the north side of the fence during the whole time treating that part immediately north of the fence as his property and actually and exclusively occupying the same. It was within an inclosure containing the dwelling house aforesaid which stood partly south of the north line of the disputed strip. The inclosure was used continuously for the full period of twenty years as appurtenant to such dwelling house. Whenever the dwelling house was occupied by the owner or a tenant the grounds were used on the north side of the fence in all respects as one having full title would use such premises. At no time during the twenty-year period did plaintiff or any one claiming under her use or occupy in any way any part of the strip of land sought to be recovered. When she constructed her sidewalk she built only to the point opposite the street end of the division fence.

The owner of the property north of the line fence in 1882 occupied it continuously till he lost the same to a purchaser under foreclosure proceedings. Thereafter the house and yard, including the strip in question, under the chain of title resting on the foreclosure proceedings, was kept for lease-

hold purposes. Generally the premises were occupied by a
tenant. There were periods when there was no tenant;
periods of absence from the premises of any person repre-
senting said defendant, but during none of such periods was
there any invasion of the premises by plaintiff, or was there
any indication, by any circumstance, of abandonment of
any of the land north of the fence. It was treated by the
person holding in defendant's chain of title as an owner
might treat property kept for leasehold purposes.

On such evidence the court directed a verdict for defend-
ant. Judgment was rendered thereon in defendant's favor
and for costs.

*A. C. Larson,* for the appellant.

*Arthur H. Shoemaker,* for the respondents.

MARSHALL, J. Counsel for appellant claim, in the main,
that the judgment should be reversed, because (1) posses-
sion in respondent *Morrison's* chain of title was not contin-
uous during a twenty-year period creating ownership by ad-
verse possession; that the occupancy was mostly by tenants
and there were periods when the house on the premises was
vacant; (2) respondent's possession, to the extent of the
premises in dispute, beyond the calls of her paper title, was
referable to mistake of boundaries, without intent to claim
beyond the line described in her deed.

1. The first point may well be passed over briefly. Ob-
viously, one's possession of land after adverse entry, by his
tenant, is his possession, and if the tenancy is terminated,
he still exercising acts of ownership over the premises, though
leaving the building thereon vacant for an interval of time
now and then, waiting for an opportunity to obtain another
tenant, the seisin not being changed by hostile entry by an
adverse claimant, the disseisin òf any other commenced by
the first entry is not interrupted. It is an elementary rule
that where adverse possession of land has once been fully

established, occasional absences or intervals of there being no person residing on the premises, such circumstances not being of a character to evidence abandonment, and there being no actual interruption by re-entry of the person originally dispossessed, do not change the nature of the adverse possession. *Ill. S. Co. v. Bilot,* 109 Wis. 418, 428, 84 N. W. 855, 85 N. W. 402; Newell, Ejectment, § 49 (p. 737).

2. The idea that, where a person enters into actual possession as owner under a deed, and extends such possession beyond the calls thereof through mistake as to the true line, it is, as a matter of law, restricted to such line as to the character of the possession,—has no place in our statutes on the subject of adverse possession. Early observations out of harmony with that have been many times in recent years shown to be contrary to the written law. The extent of adverse possession under color of title, is measured by the true boundaries indicated in the evidence of ownership relied upon, but that does not interfere with actual occupancy beyond such true boundaries, in connection with that within them, being adverse to every other claimant and sufficient, if continued long enough, to make a good title. Actual occupancy of land to the exclusion of the true owner, regardless of whether in good faith or bad faith, whether by mistake of boundaries or with intent to claim the land with full knowledge that the claim is wrongful, satisfies the calls of the statute. Such adverse possession of part of a tract under color of title, with intent to claim the whole, in legal effect extends to the boundaries of the tract, and such actual possession beyond such boundaries, operates to the same effect upon the title of any other claimant, except that the twenty-year statute applies instead of the ten-year statute. *Ill. S. Co. v. Budzisz,* 106 Wis. 499, 511, 81 N. W. 1027, 82 N. W. 534; *Pitman v. Hill,* 117 Wis. 318, 94 N. W. 40; *Clithero v. Fenner,* 122 Wis. 356, 99 N. W. 1027; *Off v. Heinrichs,* 124 Wis. 440, 102 N. W. 904; *Ill. S. Co. v. Bilot,* 109 Wis.

418, 84 N. W. 855, 85 N. W. 402; *Bishop v. Bleyer,* 105 Wis. 330, 81 N. W. 413.

In *Bishop v. Bleyer, supra,* the court disposed of a similar contention to the one now made by saying, in effect, the adverse claimant, for the statutory period, continuously occupied the premises in dispute, as owner, to the exclusion of every other person, up to the line of the fence; that gave him the title by adverse possession under the twenty-year statute for any portion of the occupied premises not within the calls of his deed.

The necessity for the system which is written into our Code in order to avoid confusion and uncertainty on the subject of adverse possession, is significantly illustrated by the claim here made and another, which, until recent years, was often dignified as legitimate and is yet disturbing in the administration of justice.   On the one hand it was claimed that adverse possession could not be grounded on possession as owner under mistake of boundaries, while on the other it was claimed that such possession must, to be effective, be characterized by good faith.  · The result was the theory that if a person, as owner, maintained exclusive, continuous occupancy by the location of his building or otherwise, partly within and partly without his true line, according to his paper title, for twenty years or any greater length of time, he was still in danger of being dispossessed of the latter portion because, if his occupancy was by mistake of boundaries, that was fatal to his claim of title, and if he intended to claim as owner regardless of the true boundary, or knowing that he was a trespasser, that was in bad faith and likewise fatal to his title.   It is obvious that the only sensible, safe, and really equitable rule is to make the physical characteristics of possession, excluding all other persons, the sole test of adverse possession, and so it was written in the Code.   It has been lost sight of at times.   Experience has demonstrated, clearer and clearer, as time has progressed and the

importance of stability of titles has grown with increase in value of property, the wisdom of the Code makers in incorporating into their work the simple test of adverse possession indicated.

A claim is made that evidence by respondent *Fannie H. Morrison,* that in 1906, she, knowing that plaintiff was setting up some claim to the strip of land in dispute, endeavored to settle it to avoid litigation, was enough, of itself, to involve the character of her possession in such uncertainty that its true character was a jury question. There are two answers to that. First, the evidence shows, plainly, that there was no offer to purchase from appellant, conceding title in her, or under circumstances inconsistent with *Mrs. Morrison's* claim of title by adverse possession. Second, the premises had been in the actual occupancy of *Mrs. Morrison* and her predecessors in title continuously for some twenty-four years before the attempt to purchase appellant's claim. Her title was then unimpeachable. An attempt to obtain a paper title after having acquired title in fact could not, under any circumstances, affect her real status as owner.

Some general principles are discussed in the briefs of counsel for appellant, with numerous citations of authorities, to support the claim that the court erred in deciding from the evidence as matter of law, that the possession of respondent and her predecessors in title had been sufficient to satisfy all the requisites of title by adverse possession. It is enough to say, in respect thereto, that such principles are in harmony with the general rule of the Code, that upon unexplained exclusive, continuous occupancy of land under a chain of title, by one not the true owner, for the statutory period to make title by adverse possession, being shown, the presumption of seisin during any part of such period in the true owner, disappears and there arises in place thereof the presumption that, during all such period, the possession had all the requisites of an adverse holding, subject to be re-

butted by proof that it was in fact subordinate to the right of the true owner, but conclusive in the absence of such rebuttal.

Here there was, without question in our judgment, continuous occupancy by *Mrs. Morrison* and her predecessors in title up to the line fence, including all of the strip in dispute. That established, plainly, disseisin of any other claimant. It showed, without room for reasonable controversy, disseisin of all but the one actually seised, for the full statutory period, putting it beyond the jurisdiction of any court to interfere therewith in favor of any other claimant. Sec. 4207, Stats. (1898), provides:

"No action for the recovery of real property or the possession thereof shall be maintained unless it appear that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within twenty years before the commencement of such action."

The foregoing in connection with sec. 4210 and sec. 4211, Stats. (1898), in a case of this sort; one where the actual exclusive occupancy as owner for the full statutory period is unquestionable, divests every person adversary to the one in possession of every element of right and vests the whole title in him, if he had none whatever before the completion of the statutory period.

It follows that the court properly directed the verdict against appellant and rendered judgment accordingly.

*By the Court.*—Judgment affirmed.