PROGRESS BLUE RIBBON FARMS, Respondent, vs. HARTER and
others, Appellants.

*October 3—October 24, 1911.*

*Adverse possession: Presumptions: Fences: Admissions as to true
line.*

1. Open, continuous, and exclusive user of land by plaintiff and his
   predecessors in title for over twenty years having been shown,
   the presumption arises that it was adverse.
2. Such a presumption was not overcome by evidence that plaint-
   iff's predecessors in title had admitted that division fences
   were not on the true line, where it appeared that they and the
   plaintiff had for over forty years continued to use the lands up
   to such fences under claim of right and to the exclusion of all
   other persons, and that during that time the fences had been
   maintained in the same place.

APPEAL from a judgment of the circuit court for Waukesha
county: MARTIN L. LUECK, Circuit Judge.   *Affirmed.*

Action for an injunction to restrain trespass upon real es-
tate and for damages.   The complaint alleged that plaintiff
was the owner and in possession of certain premises in Wau-
kesha county, Wisconsin, by virtue of a deed of conveyance
and the actual, open, notorious, exclusive, and continuous
ownership and occupancy of the premises under claim of title
of its predecessors in title for upwards of forty years; that
defendants had committed and threatened to continue to com-
mit acts of trespass and waste upon its premises; and prayed
for a perpetual injunction and damages.   The answer of the
defendants *Dingeldein* set up the question of title, asserted
their interest in the premises in dispute under the will of their
father, George Dingeldein, subject to the life estate of their
mother, *Margaret Dingeldein,* and denied that certain ancient
fences, alleged in the complaint to be the boundary line be-
tween the lands of the respective parties, were in fact the true
dividing line, or that they were ever understood to be, but
that said fences were merely temporary, and that the true line

was always in doubt, which fact was understood by the grantors of plaintiff. The answer of the defendant *Harter* was substantially to the same effect, except that his title was derived through a deed of conveyance, and that he and his grantors owned the land for more than twenty years prior to the commencement of the action.

The lands in question are located in section 32, township 6, range 19, Waukesha county, Wisconsin; that of the defendant *Harter* adjoins the premises of plaintiff on the west and south, and that of the defendants *Dingeldein* adjoins the premises of plaintiff on the east. The parcels of land in controversy involve one strip containing about two and one-half acres along the west line of the premises owned by the *Dingeldein* defendants, and another strip of about three and one-half acres along the north line of the premises owned by the defendant *Harter*.

The principal part of the evidence introduced by the parties bore on the question of whether the plaintiff was entitled to the disputed strips · of land by adverse possession. It was agreed that the ancient fences were not in fact on the original government boundary line between the lands of the respective parties.

The court, at the conclusion of the trial, made the following finding, which is the only one material on this appeal:

"That the continuous occupancy and physical possession by the plaintiff and its predecessors in title of said farm up to the ancient line or partition fences . . . for more than twenty years immediately previous to the commencement of this action, including all of said strips in dispute, to the exclusion of all other persons, created and established in the plaintiff an absolute title to said premises and to the whole thereof by adverse possession at the time of the commencement of this action."

The court entered judgment awarding to the plaintiff the disputed strips of land, enjoined the defendants from entering or committing any trespass or waste thereon, and assessed

nominal damages against them.    From such judgment they
appealed.

For the appellants there was a brief signed by *C. E. Armin,*
attorney for *Harter,* and *Ryan, Merton, Newbury & Jacob-*
*son,* attorneys for the other defendants, and the cause was
argued orally by *M. A. Jacobson* and *C. E. Armin.*    They
contended, *inter alia,* that a use and occupation by permission
and agreement, such as existed in this case, pending the deter-
mination of the true line by survey, cannot be any basis for a
claim of adverse possession.    *Fairfield v. Barrette,* 73 Wis.
463, 41 N. W. 624; *Bishop v. Bleyer,* 105 Wis. 330, 81 N. W.
413; *Mielke v. Dodge,* 135 Wis. 388, 115 N. W. 1099; *Clo-*
*suit v. John Arpin L. Co.* 130 Wis. 258, 110 N. W. 222;
*Hamachek v. Duvall,* 135 Wis. 108, 115 N. W. 634; *Peters*
*v. Gracia,* 110 Cal. 89, 42 Pac. 455; *Quinn v. Windmiller,* 67
Cal. 461, 8 Pac. 14; *McNamee v. Moreland,* 26 Iowa, 96;
*Bunce v. Bidwell,* 43 Mich. 542, 5 N. W. 1023; *Bryson v.*
*Slagle,* 44 N. C. 449; *Lowe v. Cunningham* (Tenn.) 39 S. W.
1052; *Thompson v. Slater* (Tex. Civ. App.) 34 S. W. 357;
*Russell's Adm'r v. Maloney,* 39 Vt. 579, 94 Am. Dec. 358;
*Burrell v. Burrell,* 11 Mass. 294; *White v. Hapeman,* 43
Mich. 267, 5 N. W. 313; *Clark v. Tabor,* 28 Vt. 222; *Pugh*
*v. Schindler,* 127 Mich. 191, 86 N. W. 315; *Morse v. Church-*
*ill,* 41 Vt. 649; *Handlan v. McManus,* 100 Mo. 124, 13 S. W.
207, 18 Am. St. Rep. 533.

For the respondent there was a brief by *Tullar & Lockney,*
and oral argument by *D. S. Tullar* and *Henry Lockney.*

VINJE, J.    As indicated in the foregoing statement of
facts, the only question presented by this appeal is whether or
not the finding of the court to the effect that plaintiff and its
predecessors in title had continuously for more than twenty
years immediately preceding the commencement of this action
adversely occupied the disputed strips of land is supported by
the evidence.    It clearly appears, and the defendants admit,

that the strips of land in question have been occupied continuously for more than forty years by plaintiff and its predecessors in title, but it is claimed that such occupancy was permissive and not adverse.    A continuous user by plaintiff and its predecessors in title for over twenty years having been shown, the presumption arises that it was adverse, and the burden is cast upon the defendants to overcome such presumption by affirmative proof and show that such user was not adverse.    *Hamachek v. Duvall,* 135 Wis. 108, 115 N. W. 634; *Ill. S. Co. v. Jeka,* 119 Wis. 122, 95 N. W. 97; *Closuit v. John Arpin L. Co.* 130 Wis. 258, 110 N. W. 222; *Ovig v. Morrison,* 142 Wis. 243, 125 N. W. 449.    The occupancy having been continuous, plaintiff could tack that of its predecessors in title to its own.    *Closuit v. John Arpin L. Co., supra.*    To show that the user was permissive and not adverse, defendants rely chiefly upon the testimony of several witnesses to the effect that plaintiff's predecessors in title had admitted in conversations with them that the fences and ditch were not on the true line, and that whenever the true line was ascertained the fences would be built upon it.    This testimony was in substance as follows:

The defendant *Harter* testified that, thirty-nine years ago, Mrs. Lemke, who then owned a part of what is now plaintiff's farm, admitted that the fence between them was not on the true line, and that they agreed to have it surveyed.    The old fence, however, remained, and *Harter* made repairs on it up to within two or three years.    Mrs. Lemke testified that both *Harter* and Dingeldein told her the fences were not on the true line and that she was ready to build fences on the true line, but that the fences remained as before and she claimed the right to use, and did use, the land up to the fences as they existed.    Smith, a son of a former owner of the *Harter* land, testified that his father claimed the fences were not on the true line, but it does not appear to whom the claim was made. Mr. Herman Lemke, a son of Mrs. Lemke, testified that Din-

geldein told him the fences were not on the true line, and he, on behalf of his mother, agreed to put them on the true line. This was about ten years ago. They continued, however, to crop the land up to the fences until they sold in 1906. *Margaret Dingeldein,* mother of the defendants *Dingeldein,* testified that about fifteen years ago Father Miller, who then owned a part of plaintiff's premises, said the fences were not on the true line and that defendants would get more land when the fences were put upon the true line. *Matt Dingeldein* testified that in 1884, when he was only eleven years old, he heard his father say, in a conversation with one Austerman, then the owner of a portion of what is now plaintiff's land, that the fences were not on the true line.

There was considerable testimony on behalf of plaintiff tending to discredit the testimony above referred to. But even conceding the testimony of defendants' witnesses to be true, it yet nevertheless appears that each and every one of plaintiff's predecessors in title claimed the right to occupy the lands up to the existing fences and did in fact so occupy them. It further appears that the defendants continued to repair and maintain their portion of the partition fences up to within a few years and that at no time during the last forty years has the location of such fences been changed. We have therefore a situation where plaintiff and its predecessors in title for more than twenty years continued to use, under a claim of right to do so, the lands up to the fences as they existed. This constitutes an adverse user within the meaning of sec. 4214, Stats. (1898), irrespective of the fact as to whether it was admitted that the fences might not be on the true government line. *Wollman v. Ruehle,* 104 Wis. 603, 80 N. W. 919; *Bishop v. Bleyer,* 105 Wis. 330, 81 N. W. 413; *Ill. S. Co. v. Budzisz,* 106 Wis. 499, 81 N. W. 1027, 82 N. W. 534; *Pitman v. Hill,* 117 Wis. 318, 94 N. W. 40; *Ovig v. Morrison,* 142 Wis. 243, 125 N. W. 449. The statute makes the sole test of adverse possession of land a physical exclusion of all

others under a claim of right, evidenced either by protecting it by a substantial inclosure or by usually cultivating or improving it. In this case we have both a protection by a substantial inclosure and a usual cultivation for over forty years, during which time plaintiff and its predecessors in title were in the open and exclusive possession thereof under a claim of right. None of the defendants or their predecessors in title ever exercised any dominion over it. They, as well as the rest of the world, were excluded.

The claim is made that the fences were not substantial in character, thus showing that they were intended for a temporary purpose, and that more substantial ones would be built when the true line was ascertained. They were such as are usually found in similar localities at the times they were used, being made of brush, poles, rails, and wire. It is needless to discuss whether or not they were substantial. They were maintained for over forty years in the same place; that shows they were reasonably permanent in fact, whatever the intention of the parties may have been. It also appears that part of plaintiff's land adjacent to the fences in question consisted of pasture and part of tillable land. The same was true of the lands on the defendants' side. It cannot be said, in face of the exclusive, notorious, and uninterrupted possession of the land up to the fences by plaintiff and its predecessors in title for over forty years, that the presumption flowing therefrom that such possession was adverse was overcome by the evidence of the defendants. The finding of the trial court, therefore, is not only supported by the evidence, but is in accordance with the preponderance thereof.

*By the Court.*—Judgment affirmed.