## SULLIVAN, Respondents, v. GROVES et al., Appellants.

### (172 N. W. 926).

(File No. 4502.   Opinion Filed June 17, 1919.   Rehearing denied August 15, 1919).

1. **Limitations—Realty, Recovery of Possession—Twenty Year's Statute, Whether Confined to Action at Law, Quaery—Action at Law Under "Founded on Title,"—Statutes Construed.**

If Code Civ. Proc., Sec. 43 (Sec, 2280, Rev, Code 1919), providing that no action at law for recovery of realty or its possession shall be maintained unless it appears plaintiff, his ancestor, etc., was seized thereof within 20 years, etc., does not apply to actions at law (a point not decided), yet Sec. 44, (Sec. 2281, Rev. Code 1919), providing that no cause of action, etc., "founded upon the title" to realty, shall be effectual unless

plaintiff, etc., was seized thereof within 20 years, etc., does apply to actions at law.

2.  Limitations—Realty, Possession Deemed "Under and in Subordination to Legal Title" Unless Adversely Held—Owner's Tenant, Whether Holding to Fence, Or True Line—Unsustained Finding.

Where respondents sought to justify ownership of realty under a finding of trial court that appellant, tenant of parties claiming adversely, was occupying the strip in controversy, "in the belief that the fence approximately marked the true line," with the intention to claim only to the true line, wherever it might be, and without intent to claim to the line, marked by the location of his fence regardless of the location of the true line, the tract being claimed by respondents as part of NE¼ of Sec. 13, Twp. 103, R. 65, appellants claiming as. part of NW¼ Sec. 18, Twp. 103, R. 64, the range line between said ranges coinciding with the eastern instead of western boundary of the tract, the western line of the North and south fence being in fact situate easterly of but supposedly placed approximately upon the true line between said sections, and enclosing the land in controversy; Held, that said finding is not sustained by the evidence, since the clear prepondence of it indicates the tenant claimed right to hold to the fence, his testimony, "I don't claim to hold any further than the correct line. I claim to hold out as far as that fence is. I thought that fence was on the correct line when I erected it and I think so yet," not justifying said finding.

3.  Limitations—Realty, Adverse Possession—Possession "Under Claim of Title," for 20 Years, As Adverse Holding—Statute—Cultivation, Fence Enclosure, by Tenant, Whether Under Statute—What Deemed Adverse Holding—Presumption re Legal Title, When Overthrown—Exclusive Occupancy by Non-owner, Effect Re Seizin of Holder.

Where a tenant, claiming as the NE¼ of Sec. 18, land under several grantees in chain of title based on government patent, for. over 20 years, with actual, open, notorious and uninterrupted possession, did breaking thereon for patentee grantee, cultivating the land, enclosed by fence a quarter section including the tract in dispute, tenant testifying the distance along north line of Sec. 18 from his own NE corner to the section line was about 24 rods short of 320 rods, held, that tenant and his landlord entered into possession under the landlord's claim of title founded "upon a written instrument as being a conveyance of the premises, "within the meaning of Code Civ. Proc. Sec. 47, (Sec. 2284, Rev. Code 1919), providing that whenever it shall appear that occupant or those under whom he claims entered into possession "under claim of title, exclusive of any

other right, founding such claim upon a written instrument, as being a conveyance of the premises in question," for 20 years, etc., shall be deemed to have been held adversely; that there was continued occupation and possession of the premises included in such instrument * * * under such claim (viz.: the claim that the instrument was a conveyance of the premises in question within the meaning of said section); therefore "the premises so included" (under such claim) "shall be deemed to have been held adversely (to respondents); therefore the presumption arising under Sec. 46, Code Civ. Proc., (Sec. 2283, Rev. Code 1919) providing that in actions for recovery of realty or possession thereof the person establishing legal title to the premises "shall be presumed to have been possessed thereof within the time required by law," was overthrown, and actual adverse possession established. That in order to prove adverse possession under Sec. 47, the party must enter under claim of title exclusive of any other right, "founding such claim upon a written instrument"; that he will not be heard to claim that he or his grantor ever acquired title to or interest in the tract regardless of whether or not, through some mistake of the government officials or surveyors, there was issued to his grantor a patent thereto to which he had no right; that upon unexplained exclusive, continuous occupancy under claim of title, by one not the true owner, for statutory period to make title by adverse possession, being shown, the presumption of seizin during any part of such period in the true owner, disappears, and there arises in place thereof the presumption that possession had all requisites of adverse holding, such presumption to be rebutted by proof that it was in fact subordinate to the right of true owner, but conclusive in absence of such rebuttal.

4.   **Limitations—Realty, Disputed, Mistaken, Boundary Line—Claim to True Line, Whether Adverse—Acquiescence, Effect Re Adverse Possession—"Acquiescence," Basis of in Statute— Lehman v. Smith, 40 S. D. 556, Relied On.**

The basis for the doctrine of "acquiescence," concerning claims involving disputed boundary to realty, is found in Code Civ. Proc., Sec. 49 (Sec. 2286 Rev. Code 1919), providing that where it appears there has been actual continued occupation of premises under claim of title exclusive of any other right, but not founded on a written instrument, etc., the premises so actually occupied and no other, shall be deemed to have been held adversely; that (following Lehman v. Smith, 40 S. D. 556) possession is not adverse when the party intends to claim only as far as true line, but question of adverse possession may be conclusively determined by length of time during which there has been acquiescence in a disputed boundary. Such ac-

quiescence, if continued during statutory period, conferring title through acquiescence alone; that the rule of conclusive presumption, where rival claimants are in possession and use up to a dividing line, such as a fence, is collateral to the rule of adverse possession.

5.  **Real Property—Disputed Boundary—Non-Rent Paying Tenant's Fence Enclosure, Supposedly Near True Line, Claim Under—Boundary Unknown—Irrelevant Finding Re Intention to Occupy Excluded Land, Re Claim to True Line—Limitations.**

Where findings, in a suit involving title to realty claimed by plaintiffs as part of Sec. 13-103-65, and by defendants as part of Sec. 18-103-64, were that defendant as tenant of alleged prior owner placed a fence around land .claimed as NW¼ Sec. 18, the west side of the fence being placed on or near a line supposedly approximately the true line between 13 and 18, that the alleged owner transferred to the ancester of co-defendants, from which time and for more than 20 years from date of erection of fence H continued to occupy the enclosure, using same by sufferance of the landlord and his heirs without rental or lease, that neither said ancestor nor his heirs ever knew prior to commencement of suit of boundaries of said NW¼, or the location of the fence on west side thereof, and that occupancy had never been otherwise than as stated; held, that a further finding that neither of grantee owners or decedent's heirs ever intended to occupy or to authorize H to occupy any land not actually enclosed within the true boundaries of said NW¼, or had any knowledge that H was so occupying, or that he was occupying in the belief that the fence approximately marked true line with intention to claim only to true line wherever it might be, and with no intent to claim to line marked by fence regardless of location of true line and without intent of encroaching upon NE¼ of Sec. 13 or of acquiring any portion thereof by adverse possession or otherwise—was irrelevant to the issue, and contradictory to the other findings; that statute of limitations had run against present action.

6.  **Limitations—Real Property, Incorrect Survey—Adverse Possession—Mistake of Boundaries Versus Good—Faith Claim—Physical Possession as Test Under Statute Re Paper Title—Lands Beyond Deed Calls, Whether Included—"Premises so Included, "Construed Re Adverse Holding.**

Construing Code Civ. Proc. 1903, Sec. 47 (Sec. 2284 Rev. Code 1919), concerning claims to realty founding possession under a written instrument, the resultant as a test, as between possession under mistake of boundaries as against the claim that possession, to be effective, must be in good-faith, is the true theory that if one as owner maintains exclusive continuous occupancy by location of his building or otherwise, partly

within and partly without the true line, according to his paper title, for 20 years or more, he was still in danger or being dispossessed, because if occupancy was by mistake of boundary, that was fatal to his claim of title, while if he intended to claim regardless of true boundary, or knowing he was a trespasser, that was bad faith and likewise fatal to his title; therefore the only sensible, safe and really equitable rule is that the physical characteristics of possession, excluding all other persons, is the sole test of adverse possession; and such is the meaning of the Code provision. **Held**, further, that the provisions of said section apply "to lands lying outside and clearly beyond calls of a deed." So held, where defendants claimed title to land under government patent although the true boundary line, as determined for the first time on the trial of a suit to quiet title and for possession, was some 58 rods east of where defendants claimed it to be, and from where it should approximately have been had the survey been correct; the words "so included" in said section plainly referring to the preceding words "premises included in such instrument * * *"; said words "so included" meaning the same as though the clause read "the premises so claimed to be included in such instrument shall be deemed to have been held adversely."

7. **Real Property—Limitations—Sections 47-50, C. C. P. 1903, Construed—Companion Sections—Possession Beyond Paper Title —Acts Constituting Adverse Possession, with, Without, Paper Title.**

Secs. 47 and 49, Code Civ. Proc. 1903 (Secs. 2284, 2286 Rev. Code 1919) are companion sections, both referring to cases where the "unless" clause of Sec. 46, providing that "unless it appears that such premises have been held and possessed adversely, etc." applies; that Sec. 47 refers to cases where entry under claim of title is under a written instrument or decree, that Sec. 49 covers cases where claim of title is not founded on a written instrument or decree; that Sec. 47 is broad enough to include cases of entry upon and possession of more land than that covered by the description in the instrument; otherwise the words of the clause" as being a conveyance of the premises in question" are not given the meaning they plainly contemplate shall be given; that Sec. 48 defines acts constituting adverse possession under Sec. 47; while Sec. 50 defines acts constituting adverse possession under Sec. 49; and that together Secs. 47, 48, 49 and 50, cover the entire field of the subject of adverse possession under claim of title; that said rule, as to claims under a written instrument, applies as well to land embraced within, as to those without the true line, where there has been an erroneous survey; since entry upon land beyond the true line, and continued possession under the claim that

government patent and subsequent deeds were "conveyances of the premises in question," indicates intention to claim title to the land upon which entry was made.

Whiting, J., concurring specially.

Appeal from Circuit Court, Aurora County. HON. FRANK B. SMITH, Judge.

Action by Mary H. Sullivan and Clare Sullivan, against Sarah J. Groves and others, and the Unknown Heirs, Devisees, Legatees, and the Executor or Administrator of he estate of William Groves, deceased, for possession of and to quiet title to realty. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed, and remanded with directions.

*Shull, Gill, Sammis & Stillwell, Bakewell & Bakewell,* and *Brown & Brown,* for Appellants.

*Fellows & Fellows,* for Respondents.

(2) To point two of the opinion, Appellants cited:

Ovig v. Morrison, (Wis.) 125 N. W. 449; Kelley v. Green, (Minn.) 170 N. W. 924.

Respondents cited:

Ingalls vs. Gunderson, 157, N. W., 1055, 2 C. J. 139; 1 R. C. L., Adverse Possession, 48, 51; Preble v. Maine Central R. Co., 85 Me. 260, 21 L. R. A. 829.

(5) To point five, Appellants cited:

Ramsey v. Glenny, (Minn.), 48 N. W. 322; Landon v. Townshend, (N. Y.) 29 N. E. 71.

GATES, J. This action, begun in the year 1914, involves the ownership of a tract of 58.17 acres of land the boundaries of which are of the following lengths: North line, 13 chains and 55 links; east line, 38 chains and 42 links; south line, 17 chains and 15 links; west line, 37 chains and 90 links. The plaintiffs claimed that it constituted a part of the northeast ¼ of section 13, township 103, range 65. The defendants claimed that it constituted a part of the northwest ¼ of section 18, township 103, range 64. This land was involved in the same survey as that in Mason v. Braught, 33 S. D. 559, 146 N. W. 687. Findings, conclusions, and judgment were rendered for plaintiffs. The defendants appeal from a judgment and order denying new trial.

5—Vol. 42, S. D.

Conceding, by not raising upon this appeal, the correctness of the court's finding that the range line between ranges 63 and 64 coincides with the eastern boundary of this tract instead of the western boundary, appellants yet contend that respondents had no right of action, because they or their ancestors, predecessors, or grantors were not seized or possessed of the tract within 20 years before the beginning of the action, and that appellants, their ancestors, predecessors, or grantors, had been constantly in possession of said tract ever since the year 1883. The three pertinent findings of fact on this appeal are as follows:

"VIII. That about the year 1886, with the consent and under the direction of the said Ira J. Lennox, the then owner of the said northwest quarter of section 18, the defendant, J. E. Helton, who was then occupying said premises as a tenant of said Lennox, placed a fence around said quarter section; that said fence was the property of said Helton and erected for his own use; that the west side of said fence was placed on or near a line which said Helton and Lennox supposed to be approximately the true line between said sections 13 and 18 and inclosed the land in controversy in this action; that said fence was afterwards, and about ten years prior to the trial of this action, moved by the said Helton to a line about two rods east of its first location, where it now stands and incloses the land in controversy.

"IX. That shortly after the erection of said fence, and in the same year, Lennox transferred said northwest quarter of section 18 to William Groves, and from that time to the commencement of this action the said J. E. Helton did, and does now, occupy said land, inclosed by his fence, including the land in controversy in this action, and used the same by sufferance of said William Groves and his heirs without paying any rent and without any formal written or oral lease or contract; that neither said William Groves nor his heirs ever had any knowledge prior to the commencement of this action, of the boundaries of said northwest quarter of section 18 or the location of said fence on the west side thereof; that neither said Groves nor his heirs have ever occupied or possessed the land in controversy otherwise than as hereinbefore stated.

"X.  That neither said Ira J. Lennox nor William Groves or his heirs ever had any intention of occupying or authorizing the defendant J. E. Helton to occupy any land not actually included within the true boundaries of said northwest quarter of section 18, or any knowledge that said J. E. Helton was so occupying land not within the northwest quarter of section 18, and that the defendant J. E. Helton was occupying the strip in controversy in the belief that the fence approximately marked the true line with the intention to claim only to the true line wherever it might be, and without any intention to claim to the line marked by his fence, regardless of the location of the true line, and without any intention of encroaching or tresspassing upon the northeast quarter of section 13, or of acquiring any portion of said quarter by adverse possession, or otherwise, but with the intention to claim and occupy only such land as was actually included within the northwest quarter of section 18."

[1]  Section 43, C. C. P. (section 2280, Rev. Code 1919), which has been the law of this jurisdiction ever since the year 1868, provides:

"No action for the recovery of real property, or for the recovery of the possession thereof, shall be maintained, unless it appears that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within twenty years before the commencement of such action."

The New York courts have held that this section applies only to actions at law.  See Bliss N. Y. Ann. Code (6th Ed.) § 365, and cases cited.  But, if that is so, which we do not decide, nevertheless the provisions of section 44, C. C. P. (section 2281, Rev. Code 1919), apply to the present action even if section 43 does not.  Section 44, C. C. P., lays down the same rule as to any cause of action "founded upon the title to real property."

[2]  Section 46, C. C. P. (section 2283, Rev. Code 1919), declares that possession—

"* * * shall be deemed to have been under and in subordination to the legal title, unless it appear that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action."

It is under this section that respondent justifies finding X. We are of the opinion that finding X is not sustained by the evi-

dence, because to our minds the clear preponderance of it indicates that Helton as tenant claimed the right to hold to the fence. We do not think the following italicized portion of his testimony is a justification of the finding; yet it is the only bit of evidence that can be tortured into a warrant for it. Helton's evidence was as follows:

"When I first went down there, I missed the quarter corner. It was my intention to try to put my fence on the correct line, and it has been my intention all the time to hold to the correct line. *I don't claim to hold any further than the correct line.* I claim to hold out as far as that fence is. I thought that fence was on the correct line when I erected it, and I think so yet. I never owned the northwest of 18. I have held it under the Groves family ever since they got it. It was fenced when they got it, neither Groves nor Lennox ever lived on the land."

[3] Section 47, C. C. P. (section 2284, Rev. Code 1919), defines adverse possession as follows:

"Whenever it shall appear that the occupant, or those under whom he claims, entered into the possession of premises under claim of title, exclusive of any other right, founding such claim upon a written instrument, as being a conveyance of the premises in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises included in such instrument, decree or judgment, or of some part of such premises, under such claim for twenty years, the premises so included shall be deemed to have been held adversely. * * *"

The facts in this case bring it clearly under the provisions of this section. The occupant, a tenant, claimed under the several grantees in the chain of title to the northwest ¼ of section 18, township 103, range 64, beginning back in 1883. One Rutter acquired the said land by patent from the government. He conveyed to Lennox by deed in 1883. In 1883 Helton, the owner of the northeast ¼ of said section 18, did some breaking for Lennox on the north side of Lennox's land and as far west as the present fence. Lennox was present when the breaking was done, and they located the west line of his land by a fence on section 7. Helton testified that the distance along the north line of section 18 from his own northeast corner to the fence in question

is about 24 rods short of 320 rods. From 1883 to 1886 he cultivated that piece of breaking as tenant of Lennox. In 1886 Helton, by the direction of Lennox, inclosed by fence the whole of said quarter section, including the tract in dispute. It thus appears that Lennox and the tenant entered into possession of the tract in question under Lennox's claim of title; such claim being founded "upon a written instrument as being a conveyance of the premises in question." It further appears that the tenant had been in actual, open, notorious, and uninterrupted possession of said tract for more than 28 years prior to the beginning of this action; i. e., there was "a continued occupation and possession of the premises included in such instrument * * * under such claim [viz., the claim that the instrument was a conveyance of the premises in question] for 20 years." Therefore "the premises so included [under such claim] shall be deemed to have been held adversely" to plaintiffs. Therefore the presumption arising under section 46, C. C. P., was completely overthrown and actual adverse possession established. Of said section 47 this court said in Murphy v. Dafoe, 18 S. D. 42, 99 N. W. 86:

"To constitute such adverse possession the essential requirement seems to be that the party shall enter under a claim of title exclusive of any other right, founding such claim upon a written instrument."

Upon this subject this court said in Mason v. Braught, supra:

"During all of such time they had been making improvements thereon, believing in good faith that they were the owners of the premises so occupied. At this late date and under the circumstances disclosed by the record in this case, the defendant should not be heard to claim that he, or his grantor, ever acquired any title to or interest in the tract of land in controversy, and this, too, regardless of whether or not through some mistake of the government officials or government surveyor there was issued to his grantor a patent to this tract of land when his grantor had no right to the same."

Of this section, and others similar to ours, the Wisconsin court also remarked as follows in Ovig v. Morrison, 142 Wis. 243, 125 N. W. 449:

"Upon unexplained, exclusive, continuous occupancy of land under a chain [claim] of title, by one not the true owner, for the statutory period to make title by adverse possession, being shown, the presumption of seisin during any part of such period in the true owner disappears, and there arises in place thereof the pre-sumption that during all such period the possession had all the requisites of an adverse holding, subject to be rebutted by proof that it was in fact subordinate to the right of the true owner, but conclusive in the absence of such rebuttal."

[4] It is in fact under this section and section 49, C. C. P. (section 2286, Rev. Code 1919), that the basis for the doctrine of "acquiesence" may be found. Of that doctrine this court said in Lehman v. Smith, 40 S. D. 556, 168 N. W. 857.

"As a general rule possession is not adverse when the parties intend to claim only as far as the true line. But the question of adverse possession may be conclusively determined by the length of time during which there has been acquiescence in a disputed boundary. When such acquiescence continues during the statutory period prescribed as a bar to re-entry, title may be acquired through acquiescence alone. The rule that the presumption of an agreement fixing a division line is conclusive, where both parties have been in possession and use of their respective lands up to a dividing line marked by visible objects, such as a fence, is correlated to the rule of adverse possession, and is distinct from the rule of estoppel by acts or conduct. Such possession for the statutory period barring re-entry is conclusively presumed to be adverse, and the right is barred by the statute, without further proof that possession is adverse."

Under the Minnesota statute (like our section 43, C. C. P., except as to time) the Supreme Court of that state said in Kelley v. Green (Minn.) 170 N. W. 922: '

"The fact that defendant and his predecessors supposed they were occupying lot 9 is not important. 'Where one of two ad-joining owners takes and holds actual possession of land beyond the boundary of his own * * * tract, under a claim of title there-to as being a part of his own land, though under a mistake as to the location of the boundary line, such possession, for the pur-poses of the statute, is to be deemed adverse to the true owner and a disseizin.' Seymour v. Carli, 31 Minn. 81, 16 N. W. 495."

An instructive case decided under a statute corresponding to our section 46, C. C. P., is Eldridge v. Kenning, 12 N. Y. Supp. 693, where the court said:

"Whereas, by section 368 of the same statute, such a possession for the period of 20 years is sufficient to overcome the presumption in favor of the owner of the legal title. The case at bar seems to be precisely within the doctrine declared, per Selden, J., in Crary v. Goodman, 22 N. Y. 170, 175, viz., 'that where a grantee in taking possession under his deed goes unintentionally and by mistake beyond his proper boundaries, and enters upon and actually occupies and improves land not included in the deed, claiming and supposing it to be his, this occupation is to be deemed adverse within the meaning of the statute of limitations, and, if continued for 20 years, would bar the right of the true owner."

The subject of adverse possession is thoroughly annotated in a note in 33 L. R. A. (N. S.) 923. In view of the provisions of our statute we particularly commend the author's criticism of what is known as the "Maine" rule relied on by respondents. See, also, 2 Corp. Jur. 141, § 245.

[5] It thus clearly appears that, even if the facts justified it, finding X has no place in the record in this case, and should be excluded from consideration as irrelevant to the issue and contradictory to findings VIII and IX. Upon so doing the facts found by the court clearly show that the statute of limitation had run against the present action long before plaintiffs began it.

[6] In conclusion we quote another portion of the opinion in Ovig v. Morrison, supra, as embodying the sound rules of law applicable to this case under their statute and ours:

"The necessity for the system which is written into our Code in order to avoid confusion and uncertainty on the subject of adverse possession is significantly illustrated by the claim here made and another, which, until recent years, was often dignified as legitimate and is yet disturbing in the administration of justice. On the one hand, it was claimed that adverse possession could not be grounded on possession as owner under mistake of boundaries, while on the other it was claimed that such possession must, to be effective, be characterized by good faith. The result was the theory that if a person, as owner, maintained ex-

clusive, continuous occupancy by the location of his building or otherwise, partly within and partly without his true line, according to his paper title, for 20 years or any greater length of time, he was still in danger of being dispossessed of the latter portion, because, if his occupancy was by mistake of boundaries, that was fatal to his claim of title, and if he intended to claim as owner regardless of the true boundary, or knowing that he was a trespasser, that was bad faith and likewise fatal to his title. It is obvious that the only sensible, safe, and really equitable rule is to make the physical characteristics of possession, excluding all other persons, the sole test of adverse possession, and so it was written in the Code. It has been lost sight of at times. Experience has demonstrated, clearer and clearer, as time has progressed and the importance of stability of titles has grown with increase in value of property, the wisdom of the Code makers in incorporating into their work the simple test of adverse possession indicated."

We are aware that the Supreme Court of Wisconsin, in Zuleger v. Zeh, 160 Wis. 600, 150 N. W. 406, a decision rendered later than Ovig v. Morrison, supra, has held that their section 4211, St. 1917 (our section 47, C. C. P., except as to time), does not apply to lands lying outside and clearly beyond the calls of a deed. It seems to us that this is a wrong interpretation of that section. The court, after quoting the section, said:

"The period of adverse possession is shortened to ten years only as to 'the premises included in such instrument' "
—thus entirely overlooking the clause "under such claim," viz., the claim that the written instrument was "a conveyance of the premises in question." We courteously suggest that possibly the court has again allowed itself to render an opinion to which the sentence in Ovig v. Morrison, supra, "It has been lost sight of at times," may be said to be applicable.

We are also aware that in Pope v. Hanmer, 74 N. Y. 240, the court held that the occupancy of land beyond the true line must be actual, and not merely constructive, and that in so holding the court said of their section of statute corresponding to our section 47, C. C. P.:

"It seems to me incongruous to say that a person claims title under a written instrument, to land not included in the instru-

ment, and the language of section 82 repels such an idea. It re-
quires 'continued occupation and possession of the premises in-
cluded in such instrument.' "

[7] It surely is not incongruous to say that the defendants
in the present case claim title to the land in question under the
government patent, although the true boundary line of their prop-
erty as found and determined for the first time at the trial is
some 58 rods east of where defendants claimed it to be, and of
where it should approximately have been had the survey been
correct. The interpretation we have given to said section not
only does not "repel such an idea," but is the only interpretation
which the plain language of the section demands, unless the
clauses "as being a conveyance of the premises in question" and
"under such claim" be excluded from consideration. The words
"so included" plainly refer to the preceding words "premises in-
cluded in such instrument * * * under such claim," and not sim-
ply to the words "included in such instrument." Therefore the
words "so included" mean the same as though the clause read,
"The premises so claimed to be included in such instrument shall
be deemed to have been held adversely."

It sems to us that our sections 47 and 49, C. C. P., are com-
panion sections; that they both refer to cases where the "unless"
clause of section 46, C. C. P., applies; that section 47, C. C. P.,
refers to cases where the entry under claim of title is under a
written instrument or decree; that section 49, C. C. P., covers
cases where the claim of title is not founded on a written instru-
ment or decree; that section 47, C. C. P., is clearly broad enough
to include cases of entry upon and possession of more land than
that covered by the description in the instrument, else the words
of the clause "as being a conveyance of the premises in question"
are not given the meaning which they plainly contemplate shall
be given; that section 48, C. C. P., defines the acts which con-
stitute adverse possession under section 47, C. C. P.; that section
50, C. C. P., defines the acts which constitute adverse possession
under section 49, C. C. P., and that together sections 47, 48, 49,
and 50, C. C. P., cover the entire field of the subject of adverse
possession under claim of title. It seems to us incongruous to
say of the present case, as we would be obliged to say if we
followed the last-cited Wisconsin decision, and the decision in

Pope v. Hanmer, supra, that as to the lands embraced within the true line defendants or their grantors entered into and continued possession under a claim of title founded on a written instrument, while as to the lands beyond the true line they entered into and continued possession under a claim of title "not founded upon a written instrument, or judgment, or decree." They surely entered upon the land beyond the true line and continued to possess it under the claim that the government patent and subsequent deeds were "conveyances of the premises in question," and they certainly intended to claim title to the land upon which they entered.

The judgment and order appealed from are reversed, and the cause is remanded to the trial court, with directions to enter judgment for appellants upon their counterclaim.

WHITING, J. (concurring specially). I am unable to agree with my Colleagues in their criticism of the opinion in Zuleger v. Zeh, as I am firmly convinced that the court in that case placed the only construction upon what is our section 47, C. C. P., that the plain English therein contained will permit of. My Colleagues construe this section as though the phrase "so included" found therein read "so claimed." It might be better if the Legislature had used the phrase "so claimed," but that does not justify us in disregarding the plain language used by the lawmaking department.

Section 48 prescribes the essentials of that possession which will be deemed adverse where possession is taken under claim of right based on a written instrument. Section 47 prescribes the period during which such adverse possession must continue to overcome the presumptions declared by section 46, and it declares the extent of the territory to which the adverse possession applies. If the possession is taken under claim founded on a written instrument, and the "possession of the premises included in such instrument" continues 20 years, then "the premises so included" (clearly meaning the premises included "in such instrument") shall be deemed to have been held adversely. Plainer English could not have been used, and, so far as I have been able to ascertain, no case is to be found wherein any court has given to this section the construction put upon it by my Colleagues. Not a one of the cases which they have cited, except Zuleger v. Zeh and Eldridge v. Kenning, have the remotest bearing upon the proper

construction to be given section 47. They concede that Zuleger v. Zeh holds against their conclusions. A careful reading of the opinion in Eldridge v. Kenning discloses that such opinion is also directly opposed to their views. The facts in that case were on all fours with those in this one; yet the court frankly based its decision on section 372, C. C. P. New York (our section 49, C. C. P.), saying:

"It is said that the conveyance under which the plaintiff claims did not purport to include the strip of land in question, but, in terms, conveyed only the east half of lot No. 4, and therefore bounded the land conveyed by the true center line of that lot. which is conceded to be the east line of the strip in question. All this is true, but it does not render the plaintiff's possession any the less 'adverse,' within the meaning of the statute of limitations, upon the undisputed facts of this case. Such adverse possession as will ripen into title in 20 years need not be *under color*, but only *under claim*, of title. Section 372 of the Code of Civil Procedure prescribes what is necessary to constitute an adverse possession in favor of *one whose claim is not founded upon a conveyance or decree which actually includes the premises in question*. The provision is as follows: 'For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument or a judgment or decree, land is presumed to have been possessed and occupied in either of the following cases: * * * (1) Where it has been protected by a substantial inclosure; (2) where it has been usually cultivated or improved.' In this case both of the conditions prescribed concur, and an undoubted case is made of a possession in the plaintiff and her grantors, adverse to the legal title, for a period of more than 40 years, whereas by section 368 of the same statute such a possession for the period of 20 years is sufficient to overcome the presumption in favor of the owner of the legal title."

The above italicizing is ours. In Pope v. Hanmer, 74 N. Y. 240, it was held that no "adverse possession" could be claimed under sections 82 and 83, C. C. P., now sections 369 and 370, C. C. P., of that state (our sections 47 and 48), of any land not covered by the description in the deed; and it was held, as in Eldridge v. Kenning, that actual adverse possession beyond the boundaries of the tract described in the instrument under which

right of possession was claimed would give title under their sections 84 and 85, now sections 371 and 372 (our sections 49 and 50). The writer of the opinion says:

"It seems to me incongruous to say that a person claims title under a written instrument to land not included in the instrument, and the language of section 82 [our section 47] repels such an idea."

Under the New York decisions, appellant having been in actual occupation up to the fence—a substantial inclosure sufficient to satisfy our section 50—such occupation was adverse and gave title by adverse possession under sections 46 and 49.

Moreover, it seems clear to me that there was such acquiescence in this fence as the boundary to now bar respondent from claiming beyond such fence. Lehman v. Smith, 168 N. W. 857.