HOWE, Appellant, v. SHEPARD, et al, Respondents.

(227 N. W. 839.)

(File No. 6624. Opinion filed November 26, 1929.)

*Morrison & Skaug,* of Mobridge, for Appellant.

*H. L. Woodworth,* of Ipswich, for Respondents.

FULLER, C. The contention here is whether the plaintiff, Wayne B. Howe, has acquired title to a quarter section of land in Edmunds county by the payment of taxes thereon for 10 successive years under color of title or by possession for the prescriptive period of 20 years. From decision adverse to his claim, the plaintiff appeals.

The facts are that in the year 1885 or 1886, one George Shepard came to Loyalton in Edmunds county from Stannard, Vt. His immigration was at the same time and from the same place as Augustus Fulsom, who was the father of plaintiff's first wife. Plaintiff's wife was a niece of one Joseph H. Clark, hereinafter mentioned. George Shepard left Loyalton about 1891 or 1892. While at Loyalton he made a tree claim entry for the land in controversy. The plaintiff Howe claims that Shepard's entry upon this land was made as an accommodation to him, that the land adjoined the plaintiff's homestead, and that it was understood that plaintiff was to do the work necessary to enable Shepard to procure a patent. When Shepard left Loyalton about 1892, plaintiff claims that Shepard left for parts unknown, but it appears that, a few years later, Shepard was back in Stannard, Vt., and the testimony of a daughter-in-law of Joseph Clark was to the effect that she saw George Shepard at Clark's home in Stannard in the summer of 1904 and that Shepard lived continuously with the Clark family in Stannard until Clark died in 1917. The wife of Joseph Clark was a sister of Augustus Fulsom, the father of plaintiff's first wife, above mentioned. Considerable additional testimony is to the effect that the entryman, George Shepard, lived at Stannard, Vt., for several years prior to his death in September, 1917. In 1892 the plaintiff Howe was back at Stannard, Vt., and remained there for some time, visiting a part of the time at the home of Joseph Clark. Augustus Fulsom, plaintiff's father-in-law, also made two trips back to Stannard after the year 1900 and while George Shepard, the entryman, was living with Clark. The plaintiff frequently visited with Augustus Fulsom.

It also appears that George Shepard had three children, Emma, Fred, and Charles. Charles was adjudged incompetent, and in January, 1888, Joseph Clark, above mentioned, was appointed his guardian. Charles Shepard lived with Clark from about 1888 until 1917. Emma and Fred Shepard, children of George Shepard, vis-

ited with their brother, Charles, at the home of the guardian Clark and were known to 'Clark. They received letters from their brother Charles written by members of Clark's family, and Charles Shepard was accustomed to speak of his brother and sister.

Some time prior to March 17, 1899, it came within the plaintiff's belief that proof would have to be made under applicable acts of Congress for the purpose of patent, and that if this were not done within 13 years from the date of entry, the entry would be canceled. The plaintiff then caused proof to be submitted on the entry and patent was issued upon the last-named date. The patent was issued to "the heirs of George Shepard." Thereafter one O'Ban for a time, and later his son, made use of the land for the purpose of cutting hay, and plaintiff claims that they used the premises as his tenants. From 1899 until the commencement of this action, about 1920, taxes assessed against the land were paid annually by and in the name of the plaintiff Howe, except that for the years 1902 and 1903 taxes were paid in the name of O'Ban. According to plaintiff, his arrangement with O'Ban was that the latter should pay the amount of the annual tax as rent. It is to be added that the plaintiff also left Loyalton in 1890, going to Minnesota and thence to North Dakota. He claims to have occupied this land through the tenancy of O'Ban continuously from 1890 to about 1917.

It is also the claim of plaintiff that when George Shepard was living at Loyalton (1885 to 1892), the plaintiff learned from him that he had one son by the name of Charles Shepard who was under guardianship in Vermont. Accordingly, after proof had been submitted for the issuance of patent, the plaintiff communicated with the guardian, Joseph Clark, above mentioned, and procured a quit-claim deed from the latter which purported to convey the premises to plaintiff by the grantor Clark as guardian of Charles Shepard, sole heir at law of George Shepard, deceased. The deed was dated September 1, 1898. It does not appear to have been made in connection with any court procedure for its approval. At the time of its execution, George Shepard was not dead and his three children, Emma, Fred, and Charles, were living at or in the vicinity of Stannard, Vt., to which place George Shepard later returned and continued to live until his death in 1917.

It is not contended that the deed above mentioned actually

conveyed to plaintiff the title to or any interest in the premises. But plaintiff, appealing from an adverse decision, first argues that the deed constitutes color of title, and that on account of his payment of taxes, and possession maintained in good faith for a period of 10 years, he should be adjudged owner of the land according to the provisions of Rev. Code 1919, § 2291. As for the plaintiff's good faith, the absence of which was affirmatively found by the trial court, an important distinction is to be noted between the provisions of section 2291, supra, on the one hand, and Rev. Code 1919, §§ 496 and 2280, which read as follows:

"Sec. 496. Title by Prescription. Occupancy for the period prescribed by title 2 of this code, or any law of this state, as sufficient to bar an action for the recovery of the property, confers a title thereto denominated a title by prescription, which is sufficient against all."

"Sec. 2280. General Limitation as to Real Property. No action for the recovery of real property, or for the recovery of the possession thereof, shall be maintained, unless it appears that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within 20 years before the commencement of such action."

With respect to section 2291, which, for convenience, we may call the 10-year statute, good faith upon the part of the claimant to title thereunder is specifically required, but in sections 496 and 2280, which we may for convenience refer to as the prescriptive statute, there is no requirement for good faith on the part of the claimant to the possessory title. That good faith need not be proven by such a claimant is definitely held in Sullivan v. Groves, 42 S. D. 60, 71, 172 N. W. 926.

Aside from any title the plaintiff may have acquired under the 10-year statute—which right has been negatived, as aforesaid, by the decision of the learned trial judge—we turn to the plaintiff's claim to title by prescription and find him occupying the premises for a period of more than 20 years, claiming title founded upon a written instrument. The only question for decision, therefore, is whether the plaintiff's possession of the premises was of a character sufficient to meet the requirements of Rev. Code 1919, § 2285, reading so far as here material as follows:

"Sec. 2285. Adverse Possession of Real Estate. For the purpose of constituting an adverse possession, by any person claiming a title founded upon a written instrument, or a judgment or a decree, land shall be deemed to have been possessed and occupied in the following cases:

"1. Where it has been usually cultivated or improved;

"2. Where it has been protected by a substantial enclosure;

"3. Where, although not inclosed, it has been used for the supply of fuel or of fencing timber for the purposes of husbandry, or the ordinary use of the occupant."

It is a matter of hornbook simplicity that title by prescription, as conceived in the common law, arose from a possession which was so visible and continuous and notorious that a true owner was presumed to have had knowledge thereof and by his silence to have acquisced in the occupant's claim to ownership. Numerous are the decisions which deal with the characteristics of a given manner of occupancy of land from the viewpoint of the notoriety and visible evidence of that possession. But according to the third subdivision of section 2285, supra, the plaintiff's possession was sufficient if the land was used for the purposes of husbandry or the ordinary use of the occupant. These phrases seem to introduce a statutory test, of the sufficiency of the adverse possession, which may, in some cases be somewhat different than the limited question as to whether the possession was strictly visible and notorious.

In this case it is to be inferred that the particular quarter section of land was open, raw, uncultivated, and unimproved. But direct testimony appears without substantial contradiction that the plaintiff, through his tenants, used the premises continuously for the purpose of cutting hay and grazing of live stock for the requisite statutory period. One of the plaintiff's tenants testified to this direct and specific effect, while the plaintiff, although less definite as to the continuity of the use of the premises, stated that it was a short grass country and that the tenants cut hay some years and grazed cattle some years.

Judicial note must be taken of the fact that one of the branches of husbandry in this state—and certainly, in that part of the state in which this tract is located—is the raising of live stock; and that the cutting of prairie hay, and the grazing of live stock on land, represents the use of the land for a purpose of husbandry.

With respect to "the removal of the crops of hay" it has been settled by this court (Taylor v. Edgerton, 42 S. D. 106, 109, 173 N. W. 444) that the use of land for that purpose is sufficient to constitute adverse possession under Rev. Code 1919, § 2287, which statute is not as broad as § 2285, supra, and provides that adverse possession may be sufficient where the land has been protected by a substantial enclosure" or where it has been "usually cultivated or improved."

Without intention at this time to deal with adverse possession of land which may be a part of an open range on which the live stock of different persons (including the claimant of possessory title) may be permitted to roam or range at will, and without considering the use of land for the *mere* purpose of grazing, we are impelled to hold that under this record the cutting of hay and grazing of live stock on this tract by the plaintiff through his successive tenants was the use of the tract "for the purposes of husbandry or the ordinary use of the occupant," as those phrases are used in section 2285, supra.

The findings and conclusions of the learned trial court to the contrary are opposed by undisputed evidence. The judgment and order appealed from are reversed.

SHERWOOD, P. J., and CAMPBELL and BROWN, JJ., concur.

POLLEY, J., concurs in the result.

BURCH, J. (dissenting). I cannot assent to the doctrine that the mere grazing of raw, uncultivated, and unenclosed land constitutes possession or occupancy of such land by which prescriptive rights may be attained.