HAMACHEK, Respondent, vs. DUVALL, Appellant.

*February 21—March 10, 1908.*

*Adverse possession: Interruption: Payment of taxes: Evidence: Hear-
say.*

1. Continuous and exclusive possession of land for the statutory
   period raises the presumption that the possession was adverse
   and perfects the title in the possessor, unless the other party af-
   firmatively shows that for a part of the time at least the pos-
   session was not in fact adverse.

Hamachek v. Duvall, 135 Wis. 108.

2. In an action to quiet title claimed by adverse possession, it appeared that defendant donated land to plaintiff, who entered into possession of what he understood was included within the limits of the donation. During his possession he formed a partnership with J., to whom he sold a half interest in the land and the business conducted thereon. During the existence of this partnership, defendant, having previously given no deed, in compliance with a request from J. executed to both partners a deed covering the land of the dimensions in accordance with defendant's version of the original gift. J. was unaware that the conveyance did not cover all the land which plaintiff claimed, and made no claim himself beyond the calls of the deed. Plaintiff, however, protested to defendant that the deed did not convey all the land donated, and renewed his protests during the partnership and afterwards. Before the expiration of the statutory period the partnership was dissolved and J. reconveyed to plaintiff by deed the same property covered by defendant's deed. Plaintiff continued to occupy the land as formerly. *Held* that, as between the parties to this action, plaintiff's adverse possession continued during the whole time, as well during the existence of the partnership as during the balance of the time, and was not affected by the fact that J. did not know of plaintiff's adverse claim and made no claim himself beyond the calls of the deed to him and plaintiff.

3. In an action to quiet title claimed by adverse possession, the fact that the claimant failed to pay taxes upon the land adversely held is to be considered in judging the character of his possession, but it is by no means conclusive.

4. In an action to quiet title claimed by adverse possession to land which was alleged by plaintiff to be within and by defendant to be without the limits of a donation by defendant to plaintiff, a newspaper article published at the time of such donation, stating the dimensions of the land, and prior to plaintiff's acceptance of the gift and entering into possession, is inadmissible.

APPEAL from a judgment of the circuit court for Kewaunee county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

This is an action brought under sec. 3186, Stats. (1898), to quiet the title to two strips of land in the city of Kewaunee to which the plaintiff claimed title by adverse possession. Many of the facts were undisputed. For many years prior to April, 1880, the defendant owned the whole of government

lot 4, a tract of several acres lying south of the harbor and
on the shore of Lake Michigan, in the city of Kewaunee,
which tract was bounded on the south by an east and west
street called Ellis street.   In March, 1880, the plaintiff suf-
fered the loss by fire of a small machine shop which he oper-
ated in the city of Kewaunee and contemplated leaving the
city, but the citizens, being desirous of keeping the industry
in the city, circulated a subscription paper and raised several
hundred dollars to enable him to build a new shop, and the
defendant proposed to donate to the plaintiff a small strip of
land from said lot 4 on which to build the new shop.    The
plaintiff concluded to accept the proposals, and in April,
1880, the plaintiff and defendant, with others, went to the
proposed site to stake out the lines of the parcel to be donated.
The plaintiff claims that the defendant at this time staked
out a parcel commencing in the center of Ellis street fifty-
eight feet west of a certain meander post, running north to
a point 150 feet north of the north line of Ellis street; thence
east to the lake; thence south, along the lake, to the center
line of Ellis street; and thence west to the place of beginning.
On the other hand the defendant claims that the boundary
agreed on commenced only twenty-nine feet west of the mean-
der post and ran north only 125 feet from the north line of
Ellis street.   The strips on the west and north lying between
the two disputed lines are the parcels in controversy.    The
situation will more plainly appear by reference to the map
on page 111.

The plaintiff immediately constructed a shop as indicated
on the map which he has used ever since.   No deed was ex-
ecuted at the time.   The plaintiff claims that he has adversely
occupied the disputed strips for yard purposes and for piling
materials.   The defendant does not deny that the plaintiff
has used much of the disputed territory for yard and piling
purposes, but claims that such use was permissive only, and

not exclusive or adverse.   A roadway which has been used for many years by all who desire to use it exists west and north of the plaintiff's building as indicated on the map.

Other facts appearing in the evidence will be stated in the opinion.

An advisory verdict was taken, which was subsequently adopted by the court with some modifications and additions in its findings. By these findings the claims of the plaintiff as to the location of the original lines were found to be established, and it was further found that the plaintiff had adversely occupied the disputed strips on the west and north, except where the same were encroached on by the roadway shown on the map, for more than twenty years prior to the commencement of the action. Judgment establishing the title of the plaintiff to the land so adversely occupied was entered by the court and the defendant appeals.

For the appellant there was a brief by *Geo. W. Wing,* attorney, and *Wigman, Martin & Martin,* of counsel, and oral argument by *P. H. Martin.*

For the respondent there was a brief by *O. H. Bruemmer,* attorney, and *L. J. Nash,* of counsel, and oral argument by *Mr. Nash.*

WINSLOW, C. J. We have carefully examined the evidence and find no good ground for disturbing any of the findings of fact which were in dispute upon the trial concerning the location of the lines of the original gift or the character and extent of the plaintiff's possession since April, 1880.

A serious question arises, however, as to the legal effect of certain facts found by the court upon the plaintiff's claim of continuous adverse possession. These facts were not referred to in the preliminary statement of the case, but will now be stated. In the latter part of 1883 one Janda bought a half interest in the property and business of the firm, and a partnership was formed known as Hamachek & Janda, which conducted the business until some time in 1886, when Janda sold and conveyed his interest back to *Hamachek,* since which

time *Hamachek* has operated the business alone. At the time
this partnership was formed no deed had been executed by
*Duvall* to *Hamachek,* and Janda did not know where the
lines were nor where *Hamachek* claimed they were. In
June, 1885, Janda made application to *Duvall* for a con-
veyance, and *Duvall* caused a survey to be made of the prem-
ises and the lines run according to his version of the original
agreement, and executed a warranty deed thereof running to
both partners and delivered it to Janda. At this time *Hama-
chek* was not in Kewaunee, and knew nothing of the execu-
tion of the deed until a few days later, when he returned and
was shown the deed by Janda. The deed was recorded, but
*Hamachek* immediately protested to *Duvall* that it did not
convey all the land agreed, and renewed these protests from
time to time during the continuance of the partnership and
afterwards. The court found, however, that it was not proven
by preponderance of the evidence that Janda knew that the
deed did not describe all the land which *Duvall* promised to
convey, or that he knew that the firm was claiming to hold
adversely any land outside of the calls of the deed. The
court also found that in 1886 or 1887 Janda retired from
the firm, conveying the firm property to *Hamachek* by bill
of sale and deed, which deed described only the same property
as that described in *Duvall's* deed, but that he intended to
convey by these instruments all the partnership property and
assets of which he had any knowledge, although no evidence
shows that he intended to transfer any right or interest in
any land not included in the description in the *Duvall* deed.

The court further found that the continuous and exclusive
possession and use of the whole tract lying east of the trav-
eled roadway was held by *Hamachek* down to the time when
the partnership was formed, by the firm during the existence
of the partnership, and by the plaintiff since its dissolution,
and that plaintiff's holding had been open and adverse to
the defendant at all times since April 20, 1880. It seems

somewhat surprising that Janda should not have known of
the extent of the claim nor of *Hamachek's* dissatisfaction
with the *Duvall* deed, nor yet of the protests to *Duvall* of
the insufficiency of the deed; nevertheless the findings of the
court are based upon sufficient evidence and the facts in them-
selves are not incredible, hence we must accept them.   As
this action was commenced in August, 1905, and the part-
nership holding did not terminate until some time in 1886 or
1887, it is evident that if the possession of the land was not
in a legal sense adverse during the existence of the partner-
ship the plaintiff cannot recover, because there had not been
twenty years' continuous adverse possession at the time the
action was commenced.   So the important question is pre-
sented whether the fact that Janda did not know of the ad-
verse claim, and made no claim himself beyond the calls of
the deed of 1885, operated to deprive the holding of the firm
of its hostile and adverse character and thus interrupted the
running of the statute of limitations.

There was no change of the physical possession during
the firm occupancy nor in its exclusive character.   The de-
fendant did not retake possession nor was there any acknowl-
edgment of his right to do so, unless the acts of Janda and
the reception of the deed can be so construed.   *Hamachek's*
possession from its inception in 1880 was hostile, exclusive,
and under claim of right.   The fact that the strips were not
included within the calls of the deed of 1885 does not of it-
self deprive his holding of its adverse character.   *Gilman
v. Brown,* 115 Wis. 1, 91 N. W. 227.   Continuous and ex-
clusive possession for the statutory period raises the presump-
tion that the possession was adverse and perfects the title in
the possessor, unless the other party affirmatively shows that
for a part of the time at least the possession was not in fact
adverse.   *Illinois S. Co. v. Jeka,* 119 Wis. 122, 95 N. W. 97.
Was the adverse holding interrupted during the existence
of the partnership by the fact that Janda made no claim

and was ignorant of *Hamachek's* claim? No authorities were cited to us by counsel on this exact question nor have we found any. This is not a case where the possession was mixed, the holder of the record title being in possession of a part, nor is it a case where there has been a running contest for possession between the· title holder and the claimant. *Duvall* has never been in actual possession of the strips since April, 1880, and, on the other hand, *Hamachek* has been in actual hostile possession during the whole time—as well during the existence ˚of the partnership as during the balance of the time, for ·a· tenant in common has the possession of no particular part,. but he has the entire possession as well of every part as. of the whole. Buswell, Lim. & Adv. Pos. § 296. Under sec. 4207, Stats. (1898), *Duvall* manifestly could maintain no action for the recovery of the land at the time this action was commenced because he had not been seised or possessed of the premises at any time within the preceding twenty years. As between *Hamachek* and *Duvall,* we cannot see in principle how it can be said that there has ever been any interruption of *Hamachek's* exclusive and hostile possession or a moment's time when *Duvall* recovered his possession either actually or in legal effect.

Two further contentions remain to be considered. It appears that no lands were assessed to *Hamachek* prior to 1885, and that *Duvall* paid the taxes on the whole of government lot 4 during the years from 1880 to 1885. It further appears that after the recording of the deed in 1885 the tract described in the deed was assessed to *Hamachek* and he paid taxes upon that description alone, while *Duvall* paid the taxes assessed on the balance of the government lot. These facts˙are urged as persuasive indications that *Hamachek's* holding was not hostile. The fact that the claimant fails to pay taxes upon the land adversely claimed is a fact to be considered in judging of the character of the possession, but

it is by no means conclusive. It may be satisfactorily explained. *Hamachek* testified that when, during the years from 1880 to 1885, he frequently asked *Duvall* for a deed, *Duvall* would say, "When I get the land platted you will get your deed;" and when plaintiff still insisted, "I am not bothering you. I am paying taxes on there. Can't you be satisfied?" *Hamachek* further testified that after 1885 he paid all the taxes that the assessor asked for, and thought he was paying all his taxes. The court deemed that under the circumstances his nonpayment of taxes was not fatally inconsistent with his adverse claim of ownership, and we cannot say that the conclusion is unwarranted.

An error is claimed in the exclusion of evidence. It appears that on the 19th of March, 1880, an article was published in a Kewaunee newspaper giving an account of *Duvall's* proposed donation and describing the lot to be donated as a tract 70 feet by 125. The defendant attempted to prove the publication of this article, but on objection it was excluded. The ruling was clearly right. At the time of the publication of the article *Hamachek* had not gone into possession of the land or even accepted the proposition. The newspaper statement was the purest hearsay so far as he was concerned, and in no way could be considered as affecting his rights.

*By the Court.*—Judgment affirmed.