NORTHWOODS DEVELOPMENT CORPORATION, Respondent, v. KLEMENT and wife, Appellants.

*June 2—June 30, 1964.*

For the appellants there was a brief by *Avery & Avery* of Antigo, and *Schmitt, Wurster, Tinglum & Nolan* of Merrill, and oral argument by *J. Michael Nolan.*

For the respondent there was a brief by *Winter & Winter* of Antigo, and oral argument by *Gustav Winter.*

CURRIE, C. J. The following issues are presented by this appeal:

(1) Are the trial court's findings with respect to adverse possession against the great weight and clear preponderance of the evidence?

(2) Did the trial court commit prejudicial error in sustaining objections to questions designed to elicit from Hartman whether he would have intended to claim to the fence line if he had known that the fence line did not represent the true boundary line between his premises and lot 1?

### *Adverse Possession.*

The evidence clearly establishes that the only act of possession was Hartman's pasturing cattle on the disputed parcel. This act of possession was exclusive, open, and visible to all the world including the owners of record title to such parcel. Inasmuch as the disputed parcel was part of a larger pasture

utilized by Hartman's cattle, all of which was enclosed by fencing, Hartman's possession was of a character to constitute adverse possession under sub. (1) of sec. 330.09, Stats.,[1] if coupled with a claim of title.

On the issue of claiming title the decisions of this court have repeatedly stated, "To constitute adverse possession there must be the fact of possession and the hostile intention—the intention to usurp possession." *Stone Bank Improvement Co. v. Vollriede* (1960), 11 Wis. (2d) 440, 447, 105 N. W. (2d) 789; *Bank of Eagle v. Pentland* (1928), 197 Wis. 40, 42, 221 N. W. 383; *Ryan v. Schwartz* (1896), 94 Wis. 403, 411, 69 N. W. 178. It should be noted, however, that in each of the three cited cases the context in which the quoted statement appears makes it clear that the court was concerned with permissive user. In other words, if possession was pursuant to permission of the true owner, there could not be the hostile intent necessary to constitute adverse possession.

Appellants concede that the general rule is that, where an owner has exercised exclusive and open possession for twenty years or more up to a fence line under the assumption that the fence marked the true boundary of his premises, he has thereby acquired title by adverse possession to any land intervening between his own premises and the fence. They contend, however, that this rule does not apply in the instant case because it was obvious to Hartman that the fence, in diverging southwesterly to the lake from a true east and west line, could not mark the true boundary line between lots 1 and 2. Assuming that Hartman should have been put on

---

[1] Sec. 330.09, Stats., provides:

"For the purpose of constituting an adverse possession by a person claiming title, not founded upon some written instrument or some judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only:

"(1) When it has been protected by a substantial inclosure.

"(2) When it has been usually cultivated or improved."

inquiry we find no merit to this contention. In fact, there would seem to be a clearer case for spelling out hostile intent where the possessor knows the fence does not mark the true boundary line than where he does not have such knowledge. On this issue this court, speaking through Mr. Justice MARSHALL, declared in *Ovig v. Morrison* (1910), 142 Wis. 243, 247, 125 N. W. 449, that:

> "Actual occupancy of land to the exclusion of the true owner, regardless of whether in good faith or bad faith, whether by mistake of boundaries or with intent to claim the land with full knowledge that the claim is wrongful, satisfies the calls of the statute."

See also *Burkhardt v. Smith* (1962), 17 Wis. (2d) 132, 140, 115 N. W. (2d) 540; 4 Wisconsin Law Review (1926), 41.

Hartman testified at least twice that he intended to claim to the fence line. In any event, there being no evidence that his use for pasturing purposes was permissive, a presumption arises from the continuance of such exclusive possession for more than twenty years that the possession was hostile and adverse. *Ovig v. Morrison, supra,* pages 249, 250; *Hamachek v. Duvall* (1908), 135 Wis. 108, 114, 115 N. W. 634.

Appellants further argue that because Herbst had knowingly constructed the west portion of the fence so as to markedly diverge southwesterly from his true north boundary, the pasturing activities of Hartman on the disputed parcel were not sufficient to apprise Herbst of any adverse or hostile intent on Hartman's part. We find this argument wholly unconvincing. Pasturing cattle regularly in an enclosed pasture by a person conducting a dairy farm would seem to us to be of a nature sufficiently open and notorious to afford the basis for adverse possession.[2] The circumstance that the fence

---

[2] The cases from other jurisdictions appear to have taken conflicting positions on the question of whether pasturing livestock is a sufficient possession to meet the requirements of adverse

forming one side of the enclosed pasture was constructed by the true owner instead of the adverse possessor would appear to be entirely fortuitous. It is the entire enclosure of the pasture in the instant case which excluded Herbst and his successors in title from possession of the disputed parcel.

Appellants also contend that the trial court should have found no adverse possession on the part of Hartman because of his failure to pay taxes on the disputed parcel. While failure of the adverse claimant to pay taxes is an element to be considered in determining the issue of adverse possession it is not conclusive. *Burkhardt v. Smith, supra,* page 140; and *Hamachek v. Duvall, supra,* pages 115, 116.

We have no hesitancy in determining that the trial court's finding of more than twenty years of open, continuous, notorious, and exclusive possession by Hartman of the disputed parcel was not against the great weight and clear preponderance of the evidence. By reason of such finding it necessarily follows that plaintiff has succeeded to Hartman's title to this parcel and was properly granted judgment quieting title thereto.

### Rulings on Evidence.

As previously mentioned, Hartman testified that he intended to claim the land to the fence. During cross-examination, appellants' counsel put several questions to Hartman seeking to elicit from him whether he would then have intended to claim only to the true line had he known the fence was south of the true boundary of his premises. The trial court sustained objections to these questions, which appellants contend constituted prejudicial error. They argue that,

possession. Cases which hold that such is sufficient are: *Faulks v. Schrider* (D. C. Cir. 1940), 114 Fed. (2d) 587; *McRae v. Ketchum* (1939), 138 Fla. 610, 189 So. 853; *Berry v. Cohn* (1920), 47 Cal. App. 19, 189 Pac. 1044; and *Young v. Newbro* (1948), 32 Wash. (2d) 141, 200 Pac. (2d) 975. Contra: *Richey v. Miller* (1944), 142 Tex. 274, 177 S. W. (2d) 255, affirming 173 S. W. (2d) 490.

if Hartman had only intended to claim title to the true boundary line, his possession of the disputed parcel would not have been coupled with the hostile intent necessary to make such possession adverse.

This court in *Bettack v. Conachen* (1940), 235 Wis. 559, 564, 565, 294 N. W. 57, held that where the intention is not to claim to the visible boundary, such as a fence, unless it is the true line, the possession is not adverse. In support of this holding a number of earlier cases were cited together with the note, "Possession with intention to claim to true line only not adverse," 97 A. L. R. 21. This seems to be the rule in most jurisdictions. 5 Thompson, Real Property (1957 Replacement), p. 547, sec. 2548. In 4 Tiffany, Real Property (3d ed.), p. 475, sec. 1159, this rule is severely attacked wherein the author comments:

"In no case except in that of a mistake as to boundary has the element of mistake been regarded as having any significance, and there is no reason for attributing greater weight thereto when the mistake is as to the proper location of a boundary than when it is a mistake as to the title to all the land wrongfully possessed. And to introduce the element of mistake, and then limit its significance by an inquiry as to the intention which the possessor may have as to his course of action in case there should be a mistake, *an intention which has ordinarily no existence whatsoever,* is calculated only to cause confusion without, it is conceived, any compensating advantage." (Emphasis supplied.)

To us the above quotation from Tiffany makes good sense. So long as an adverse claimant in the position of Hartman actually intended to claim title to the fence it seems wholly immaterial to ascertain what his intention in that respect might have been if he had known some additional fact. The rule of *Bettack v. Conachen, supra,* should be limited to situations where the adverse claimant testifies that he only intended to claim to the fence or other visible boundary, *if it*

*constituted the true boundary line.* Hartman testified to no such qualified intention. Therefore, the trial court properly sustained objections to questions which sought to ascertain a conjectural intent that he did not entertain at the time he exercised possession to the fence.

*By the Court.*—Judgment affirmed.