STARK, P.J.
¶1 Kevin, Cheryl, David and Karen Jagiello ("the Jagiellos") appeal a judgment, entered following a bench trial, determining that David Fabry acquired legal title to a parcel of land by adverse possession. The Jagiellos argue the evidence at trial was insufficient to establish adverse possession because: (1) the circuit court improperly relied on the existence of a fence erected by the common grantor from whom both the Jagiellos and Fabry acquired their property; and (2) absent the fence, the other evidence regarding Fabry's use of the disputed parcel was insufficient to prove adverse possession.
¶2 We conclude the circuit court properly relied on the existence of the fence erected by the parties' common grantor. We further conclude that the evidence at trial, viewed in its totality, was sufficient to establish that Fabry adversely possessed the disputed parcel. We therefore affirm.
BACKGROUND
¶3 Fabry and the Jagiellos own adjacent parcels of property in Oconto County. It is undisputed that, prior to 1991, both parcels were owned by Earl Guseck. Fabry acquired the eastern portion of Guseck's property in October 1991. Guseck retained the western portion of the property until his death. The Jagiellos purchased that property from Guseck's estate in June 2017.
¶4 After their purchase, the Jagiellos contested the location of the boundary line between the parties' properties. Fabry believed the property line was demarcated by a fence that Guseck had constructed before Fabry purchased his parcel. However, the Jagiellos hired a surveyor who determined that, although the fence line commenced on the actual boundary line at the southern end of the parties' properties, as the fence proceeded north, it meandered west onto the Jagiellos' property. In other words, for all but the very southern end of the parties' properties, the true boundary line lay to the east of the fence line. We shall refer to the approximately two acres of property between the actual boundary line and the fence line as the "disputed parcel." The northern portion of the disputed parcel is wooded, and the southern portion is farmland.
¶5 In August 2017, Fabry filed the instant lawsuit, seeking to quiet title to the disputed parcel. Fabry alleged he had "maintained uninterrupted possession of the [disputed parcel] for more than 20 years" and had therefore obtained title to it through adverse possession, pursuant to WIS. STAT. § 893.25 (2017-18).[1] A bench trial on Fabry's adverse possession claim took place over two days in January and February 2018.
¶6 At trial, Fabry testified that when he purchased his property in 1991, he and Guseck "walked" the property's western boundary line together, and Fabry understood that the boundary ran along the fence line. Fabry stated the fence was "still there" in 1991, and although "there were pieces of it that were broken and it was starting to diminish ... you could see there was a fence line there, and there are rocks and grass between the two areas." Fabry conceded the fence's condition had further deteriorated since he purchased the property. Nonetheless, Daniel Hendrickson, a survey field technician hired by Fabry, testified he could discern the existence of a fence line-albeit one that was "broken" in places-when he viewed the property in September 2017.
¶7 The circuit court also heard testimony from Norman Peterson, who helped Guseck farm his property from 2008 until 2015 or 2016. When asked about his understanding of the boundary line between Fabry's property and what was then Guseck's property, Peterson testified, "There were trees. There was an old fence line, rocks. We'd pick rocks and put them on the fence line." He further testified that "there was a hill mound between the two properties and some trees and there was some fence posts and rocks." Peterson stated there was a clear distinction between the fields on either side of the fence line, and both parties farmed "right up to that fence line and field stone line." He testified Guseck respected the fence line "as being the boundary between the properties." Peterson conceded the fence was not "perfect," but he testified it was sufficient for him to discern "where [he was not] supposed to be."
¶8 Witnesses at trial also testified regarding Fabry's use of the disputed parcel. Fabry testified he had leased the southern portion of his property to his cousin, Lloyd Fabry, who farmed that land from 1992 until 2015. Fabry testified Lloyd planted crops on the property up to the fence line during each of those years. Lloyd confirmed that he had farmed Fabry's property from 1992 until 2015. He testified he was able to differentiate Fabry's property from Guseck's property based on "the dilapidated fence" and the fact that "one side was a little higher than the other in places." He further testified that Guseck respected the fence line as the boundary between the two properties and that the fields on both sides were farmed "right up to that fence line."
¶9 Fabry also testified that he had hunted on the northern, wooded portion of his property-including the disputed parcel-every spring and fall since he purchased it. In addition, Fabry testified he had erected a permanent tree stand in the disputed parcel in November 1992, which he later replaced in 2003, and had also placed temporary tree stands in the disputed parcel. Fabry further testified that he had planted trees in the disputed parcel on multiple occasions beginning in 1992 and had cut and stacked wood from downed trees and branches in that area.
¶10 Finally, Fabry and Peterson both testified that Fabry had posted "No Trespassing" signs in the disputed parcel. Peterson further testified that he and Guseck respected those signs, and Guseck "actually showed [Peterson] where they were." Hendrickson confirmed that he observed "No Trespassing" signs in the disputed parcel when completing his survey work in September 2017.
¶11 After trial, the circuit court issued a memorandum decision concluding Fabry had proven, by clear and convincing evidence, that he adversely possessed the disputed parcel for the twenty-year period from 1991 to 2011. The court found there was "overwhelming evidence" that the southern, non-wooded portion of the disputed parcel was protected by a substantial enclosure-i.e., the fence line-for more than twenty years. The court further found that Fabry had "cultivated the southern part of the property; the farm field."
¶12 As for the northern, wooded portion of the disputed parcel, the circuit court found that area "was protected by a substantial enclosure ... but the fence did deteriorate." Nonetheless, the court found that Fabry had usually cultivated or improved the northern portion of the disputed parcel by hunting on it, erecting permanent deer stands, planting trees, cutting wood, and posting "No Trespassing" signs. In assessing the evidence, the court specifically found that Fabry, Peterson, Hendrickson, and Lloyd Fabry were credible witnesses. The court subsequently entered a judgment granting Fabry legal title to the disputed parcel, and the Jagiellos now appeal.
DISCUSSION
¶13 Our review of an adverse possession claim presents a mixed question of fact and law. Wilcox v. Estate of Hines , 2014 WI 60, ¶15, 355 Wis. 2d 1, 849 N.W.2d 280. We will accept the circuit court's findings of fact unless they are clearly erroneous. Id. However, whether the facts are sufficient to establish adverse possession is a question of law that we review independently. Id.
¶14 The requirements for an adverse possession claim that is not founded on a written instrument are set forth in WIS. STAT. § 893.25, which "codifies the common law elements of adverse possession." Wilcox , 355 Wis. 2d 1, ¶20. The statute permits a party to acquire title to real property by showing that the party and/or its predecessors in interest adversely possessed the property for an uninterrupted period of twenty years. Sec. 893.25(1). To establish adverse possession under § 893.25, a party must show: (1) "actual continued occupation under claim of title, exclusive of any other right"; and (2) that the property was either "[p]rotected by a substantial enclosure" or "[u]sually cultivated or improved." Sec. 893.25(2). In other words, a party claiming adverse possession under § 893.25 must show that he or she used the disputed property for the requisite period of time in an "open, notorious, visible, exclusive, hostile and continuous" manner that would have apprised a reasonably diligent landowner and the public that the party claimed the land as his or her own.[2] Pierz v. Gorski , 88 Wis. 2d 131, 137, 276 N.W.2d 352 (Ct. App. 1979).
¶15 A party seeking to claim title through adverse possession bears the burden of proving the above elements by clear and positive evidence. Peter H. & Barbara J. Steuck Living Tr. v. Easley , 2010 WI App 74, ¶15, 325 Wis. 2d 455, 785 N.W.2d 631. Moreover, the evidence is strictly construed against the claimant, and all reasonable presumptions are made in favor of the true owner. Id.
¶16 In this case, the Jagiellos argue the evidence at trial was insufficient to establish adverse possession under WIS. STAT. § 893.25 because: (1) the circuit court improperly relied on the existence of the fence that Guseck erected before either Fabry or the Jagiellos purchased their parcels; and (2) absent the fence, the other evidence regarding Fabry's use of the disputed parcel did not clearly and positively show that property was usually cultivated or improved. For the reasons explained below, we conclude the circuit court properly relied on the fence when determining whether the disputed parcel was protected by a substantial enclosure. We further conclude that, when considered in its totality, the evidence at trial was sufficient to establish adverse possession under WIS. STAT. § 893.25(2)(b)1. and 2.
I. Existence of the fence line
¶17 The circuit court concluded the disputed parcel "was protected by a substantial enclosure, the fence line, for more than twenty years."[3] "The purpose of the substantial enclosure requirement is to alert a reasonable person to the possibility of a border dispute." Steuck Living Tr. , 325 Wis. 2d 455, ¶26. The enclosure "must be of a substantial character in the sense of being appropriate and effective to reasonably fit the premises for some use to which they are adapted." Id. (quoting Illinois Steel Co. v. Bilot , 109 Wis. 418, 446, 85 N.W. 402 (1901) ). However, the enclosure "need not actually prevent others from entering" the disputed property. Id.
¶18 The Jagiellos argue the fence at issue in this case cannot satisfy the substantial enclosure requirement because it was erected by Guseck at a time when he owned both the Fabry and Jagiello parcels. They contend that, because Guseck built the fence, "its remaining presence on his parcel (the Jagiello Parcel) after Guseck sold the other Parcel to [Fabry] cannot be said to have put Guseck on notice of a border dispute, let alone constitute 'visible' evidence that Fabry intended to exclude Guseck from his own property." The Jagiellos ask us to hold, as a matter of law, "that a claim of adverse possession cannot be premised on the existence of an enclosure or structure erected by the party against whom the claim for adverse possession is asserted."
¶19 We decline the Jagiellos' invitation to establish the rule of law they propose. Although Guseck erected the fence at a time when he owned both of the parcels at issue in this case, Fabry testified at trial that, when he purchased his parcel, Guseck identified the fence line as the boundary between the two properties. Fabry's testimony was corroborated by Peterson and Lloyd Fabry, both of whom testified that Guseck respected the fence line as the property line.[4] The circuit court expressly found Fabry, Lloyd Fabry, and Peterson to be credible witnesses. Their testimony shows that-contrary to the Jagiellos' assertion-the fence did provide visible evidence that Fabry intended to exclude Guseck from the disputed parcel. Both men clearly understood that Fabry was claiming ownership of the property east of the fence line. The fact that Guseck erected the fence at a time when he owned both parcels does not affect our analysis. What matters is that, after selling one of the parcels to Fabry, Guseck recognized and respected the fence line as the western border of Fabry's property.
¶20 In their reply brief, the Jagiellos correctly observe that a claimant's use of property pursuant to permission from the legal titleholder cannot give rise to adverse possession. See Northwoods Dev. Corp. v. Klement , 24 Wis. 2d 387, 392, 129 N.W.2d 121 (1964) (stating possession pursuant to the true owner's permission does not demonstrate the "hostile intent necessary to constitute adverse possession"). The Jagiellos argue the evidence in this case shows that Guseck, the true owner of the disputed parcel, permitted Fabry to occupy that property, thus defeating Fabry's adverse possession claim.
¶21 However, as this court has previously recognized, "[t]he law draws a distinction between acquiescence and permissive use." Schultz v. Frisch , No. 2010AP904, unpublished slip op. ¶19 (WI App Feb. 23, 2012). While permissive use defeats an adverse possession claim, acquiescence "is simply another form of adverse possession." Id. Adverse possession by acquiescence occurs when neighboring property owners treat a common marker as their joint property line for the statutory twenty-year period. Id. , ¶20; see also Steuck Living Tr. , 325 Wis. 2d 455, ¶35. That is precisely what occurred in this case. From 1991 until at least 2011, Guseck and Fabry treated the fence line as the boundary between their properties. Guseck did not grant Fabry permission to use property to which Guseck believed he held title. Rather, he believed Fabry owned the land to the east of the fence line, and, as a result, he acquiesced in Fabry's use of that property. Under these circumstances, the circuit court properly considered the existence of the fence line in its adverse possession analysis.
II. Evidence of adverse possession
¶22 The Jagiellos next argue that, absent the evidence regarding the fence line, the remaining evidence at trial was insufficient to establish that Fabry adversely possessed the disputed parcel. We have already concluded, however, that the circuit court properly relied on the existence of the fence line in its adverse possession analysis. We further conclude that, when considered in its totality, the evidence at trial was sufficient to establish adverse possession under WIS. STAT. § 893.25(2)(b)1. and 2.
¶23 The circuit court first concluded the southern portion of the disputed parcel was protected by a substantial enclosure-i.e., the fence line. See WIS. STAT. § 893.25(2)(b)1. We agree with that conclusion. Multiple witnesses testified at trial regarding the existence and condition of the fence line between the Fabry and Jagiello parcels. The court found those witnesses credible, and "[w]hen the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony." See State v. Peppertree Resort Villas, Inc. , 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345. Although the Jagiellos assert-in a single-sentence argument-that the fence was "so dilapidated that it could not credibly be said to have served as an enclosure to/from the [disputed parcel]," they do not cite any evidence to support that assertion, nor do they explain why the court's credibility determinations were "inherently or patently incredible or in conflict with the uniform course of nature or with fully established or conceded facts." See Global Steel Prods. Corp. v. Ecklund Carriers, Inc. , 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269. The testimony at trial amply supports the court's conclusion that the southern portion of the disputed parcel was protected by a substantial enclosure.
¶24 In addition, the circuit court properly concluded that Fabry had "cultivated" the southern portion of the disputed parcel by farming it. See WIS. STAT. § 893.25(2)(b)2. Both Fabry and Lloyd Fabry testified that Lloyd farmed the southern portion of Fabry's property from 1992 until 2015 and that his farming operations extended up to the fence line. The court expressly found Fabry and Lloyd to be credible witnesses. The Jagiellos argue the Fabrys' farming activity was insufficient to give rise to adverse possession because they "simply continued to farm the area that had been previously farmed by Earl Guseck when Earl Guseck owned both Parcels," which was insufficient to "put Guseck on notice that Fabry was intending to take title to a piece of Guseck's land." We disagree. By permitting Lloyd to farm up to the fence line every year from 1992 until 2015, Fabry clearly put Guseck on notice that he was claiming ownership of the property east of the fence line.
¶25 As for the northern, wooded portion of the disputed parcel, it is unclear whether the circuit court concluded that area was protected by a substantial enclosure. See WIS. STAT. § 893.25(2)(b)1. In its memorandum decision, the court initially stated the disputed parcel "was protected by a substantial enclosure, the fence line, for more than twenty years." The court then specifically addressed the southern portion of the disputed parcel, stating, "The southern farmed area was still protected by a substantial enclosure after the fence deteriorated .... There is overwhelming evidence to that effect." However, the court continued, "The hunted/wooded area to the north is a different situation. It was protected by a substantial enclosure as I have found, but the fence did deteriorate." Nevertheless, the court then concluded Fabry had usually cultivated or improved the northern portion of the disputed parcel. See § 893.25(2)(b)2.
¶26 Regardless of whether the northern portion of the disputed parcel was protected by a substantial enclosure, the circuit court properly concluded Fabry had usually cultivated or improved that area. Evidence was introduced at trial that, after purchasing his property in 1991, Fabry hunted on the northern portion of the disputed parcel every fall and spring. Fabry also testified he had erected both permanent and temporary deer stands in the disputed parcel. He further testified that he had planted trees in the disputed parcel on multiple occasions beginning in 1992 and had cut and stacked wood from downed trees and branches in that area. The evidence also showed that Fabry had repeatedly posted "No Trespassing" signs in the northern portion of the disputed parcel. We agree with the circuit court that, taken together, all of these factors establish that Fabry usually cultivated or improved that property.
¶27 In arguing to the contrary, the Jagiellos separately analyze each of Fabry's activities in the northern portion of the disputed parcel and argue each activity is insufficient to show usual cultivation or improvement under WIS. STAT. § 893.25(2)(b)2. However, when analyzing whether the evidence is sufficient to establish the elements of adverse possession, we must consider the totality of the evidence regarding Fabry's use of the disputed parcel. See, e.g. , Kruckenberg v. Krukar , 2017 WI App 70, ¶13, 378 Wis. 2d 314, 903 N.W.2d 164. Here, while each individual use of the disputed parcel might have been insufficient to give rise to adverse possession when considered in isolation, taken together, Fabry's acts of hunting, placing permanent and temporary deer stands, planting and cutting trees, and posting "No Trespassing" signs were sufficient to show that he usually cultivated or improved the northern portion of the disputed parcel.
¶28 The Jagiellos also rely heavily on Steuck Living Trust to support their claim that the evidence was insufficient to establish usual cultivation or improvement. However, Steuck Living Trust is distinguishable on its facts. In that case, the plaintiffs alleged they had obtained title to a seventeen-acre parcel by adverse possession, based on the conduct of their predecessors in title. Steuck Living Tr. , 325 Wis. 2d 455, ¶¶2-4. The plaintiffs' immediate predecessor in title testified at trial that he had bow hunted in the disputed area once; he went four-wheeling there five or six times; he took friends to walk there; and he cleared brush from a trail. Id. , ¶5. Another prior owner testified that he had hunted in the disputed area "steadily" from 1974 to 2003; he had erected portable tree stands there; and he had constructed a road and walking trail. Id. , ¶¶6, 20. However, the true owner-Easley-testified that he was not aware of any hunting activity in the disputed area and that, although he had seen two tree stands there, they were "very old" and he believed they predated his purchase of the property. Id. , ¶7.
¶29 On appeal, we concluded the "regular use of the disputed area for hunting, the deer stands, and the dirt road and trail do not constitute open, notorious, visible, exclusive and hostile use." Id. , ¶19. We explained there was no evidence that Easley had ever encountered the plaintiffs' predecessors in title hunting in the disputed area. Id. , ¶20. We rejected the circuit court's finding that the sound of gunshots should have put Easley on notice of an adverse claim, noting Easley could not have been sure that the shots came from the disputed area and, in any event, the shots "would have been consistent with trespassers." Id. We similarly concluded the presence of portable tree stands in the disputed area was "consistent with trespassers." Id. We also reasoned that the dirt road and trail were "consistent with an easement to [a nearby] lake rather than adverse possession of the seventeen acres." Id. Given the nature and size of the property, we concluded the cutting of a single tree by one of the plaintiffs' predecessors in title was "not reasonable notice of an exclusive claim" to the disputed area. Id. , ¶21. Finally, we noted that neither of the plaintiffs' predecessors in title had "posted the disputed area, which would have been notice to Easley that someone else claimed it." Id.
¶30 Steuck Living Trust differs from this case in several important respects. First, it appears the hunting activity in this case occurred with greater regularity than that in Steuck Living Trust . Second, Easley was apparently unaware of the hunting activity in the disputed area in Steuck Living Trust , and we concluded there was no reason he should have been aware of that activity. Conversely, in this case, Peterson expressly testified that he had observed Fabry and his wife hunting in the disputed parcel from Guseck's property, which gives rise to a reasonable inference that Guseck was also aware-or should have been aware-of their hunting activity.
¶31 Third, while Steuck Living Trust involved only "portable" deer stands, Fabry installed both temporary and permanent deer stands in the disputed parcel. Fourth, although Steuck Living Trust involved a single instance of cutting down a tree in the disputed area, Fabry testified he repeatedly planted trees in the disputed parcel beginning in 1992 and also cut and stacked wood from downed trees and branches in that area. Fifth, we emphasized in Steuck Living Trust that the plaintiffs' predecessors in title had not posted the disputed area, which would have given Easley notice of their claim. Here, in contrast, there was ample evidence that Fabry posted "No Trespassing" signs in the disputed parcel. Furthermore, there was evidence that Guseck was aware of-and respected-those signs. Sixth, in Steuck Living Trust , we expressly concluded that the disputed area was not protected by a substantial enclosure. Id. , ¶33. In this case, although the circuit court found that the fence between the parties' properties had deteriorated over the years, there was nevertheless some undisputed evidence that a fence had previously existed in the wooded area and that Guseck respected that fence as being the western boundary of Fabry's property.
¶32 Taken together, the evidence in this case demonstrates that, for at least twenty years, the southern portion of the disputed parcel was protected by a substantial enclosure, and Fabry usually cultivated or improved the entirety of the disputed parcel. Fabry's use of the disputed parcel was "open, notorious, visible, exclusive, hostile and continuous" and would have apprised a reasonably diligent landowner and the public that Fabry claimed the disputed parcel as his own. See Pierz , 88 Wis. 2d at 137. As such, the circuit court properly concluded that Fabry had acquired legal title to the disputed parcel by adverse possession.
By the Court. -Judgment affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Our supreme court has clarified that the "hostility" requirement under the common law is equivalent to the "claim of title" requirement in Wis. Stat. § 893.25(2)(a). See Wilcox v. Estate of Hines , 2014 WI 60, ¶22 & n.13, 355 Wis. 2d 1, 849 N.W.2d 280. No "deliberate, willful, unfriendly animus" is required. Id. , ¶22.

As discussed in greater detail below, it is unclear whether the circuit court concluded the entire disputed parcel was protected by a substantial enclosure, or only the southern, non-wooded portion of the disputed parcel. Regardless, the court concluded the entire disputed parcel was usually cultivated or improved, pursuant to Wis. Stat. § 893.25(2)(b)2.

Lloyd Fabry testified he farmed Fabry's property from 1992 until 2015, which encompassed nearly the entire twenty-year period from 1991 until 2011 during which the circuit court found that Fabry adversely possessed the disputed parcel. Although Peterson testified he helped Guseck farm his property from only 2008 until 2015 or 2016, the court could reasonably infer that if Guseck considered the fence line to be the property line during that time period, the same was true between 1991 and 2008.