COURT OF APPEALS
DECISION
DATED AND FILED

April 2, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1916**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV151

IN COURT OF APPEALS
DISTRICT IV

ERIC AND PATRICIA OLMSTED AND
JEFFREY D. EWING AND KELLY
C. TOMKO, TRUSTEES,

   PLAINTIFFS-APPELLANTS,

 V.

JOHN G. AND GRETCHEN S. CRASE,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Columbia County: W. ANDREW VOIGT, Judge. *Dismissed.*

Before Graham, P.J., Kloppenburg, and Taylor, JJ.

¶1    GRAHAM, P.J. In this case, Eric and Patricia Olmsted (the Olmsteds) and Jeffrey Ewing and Kelly Tomko-Ewing as trustees (the Ewings), who own parcels of land in Columbia County, asserted adverse possession claims

against the owners of the neighboring parcel, John and Gretchen Crase (the Crases). The Olmsteds and the Ewings appeal a final judgment dismissing their claims that the circuit court entered following a bench trial; and they also appeal an order denying their WIS. STAT. § 805.17(3) (2023-24)[1] motion for reconsideration. We dismiss the appeal for lack of jurisdiction because the Olmsteds and Ewings did not timely appeal the final judgment, and because the order denying reconsideration did not dispose of any new issues that were not disposed of in the final judgment.

## BACKGROUND

¶2 The Olmsteds have owned a 20-acre parcel in Columbia County since 1996, and the Ewings have owned a 20-acre parcel that is directly north of the Olmsted parcel since 2002. The Crases' 40-acre parcel is directly west of the Olmsted and Ewing parcels, and the Crases have owned their parcel since 1996.

¶3 This dispute concerns the boundary line between the Crase parcel and the parcels owned by the Olmsteds and the Ewings. It is undisputed that an older post and wire fence marked the approximate boundary between the Olmsted and Crase parcels when the Olmsteds and the Crases bought their respective parcels in 1996, but the parties dispute the condition of that fence in more recent years. For their part, the Ewings installed a fence near the approximate boundary between the Ewing and Crase parcels in 2004 or 2005.

¶4 In 2022, the Crases hired a surveyor to determine the exact boundaries between their parcel and the Ewing and Olmsted parcels. The survey

---

[1] All references to the Wisconsin Statutes are to the 2023-24.

2

showed that the existing fence lines did not mark the true boundaries, and that the Olmsteds and the Ewings had been encroaching onto the Crase property by up to 17 feet. A survey commissioned by the Olmsteds and the Ewings produced similar results. John Crase removed the existing fences, posts, and wire and relocated those items to the boundary that had been marked on the surveys.

¶5 The Ewings and the Olmsteds retained an attorney and filed the underlying complaint in the circuit court. Going forward, when discussing claims and arguments that they jointly made in this litigation, we refer to the Ewings and the Olmsteds collectively as the Plaintiffs. In their complaint, the Plaintiffs alleged that they had adversely possessed the strip of land between the surveyed boundary and the fence lines through years of use and activity, and they also sought money damages related to the removal of their fences.

¶6 The circuit court held a bench trial, and at the conclusion, it ruled in favor of the Crases. The court determined that the Plaintiffs had not "established their burden of proof … as to the requirements of adverse possession" and were not entitled to damages. Specifically with respect to the Olmsteds' fence, the court determined that it had been "an old, downed fence with steel posts," and that it was "in a seriously dilapidated condition," was "largely down on the ground," and was "not maintained in any reasonable fashion by the Olmsteds." The court also found that "there's no indication that Mr. Crase caused the fence to come down [prior to the March 2022 survey] other than pure speculation." A dismissal

order, which we refer to as the "final judgment," was entered on February 20, 2025.[2]

¶7 The Plaintiffs filed timely a motion for reconsideration pursuant to WIS. STAT. § 805.17(3). The substance of their argument was limited to the circuit court's findings of fact and legal conclusions with respect to the Olmsteds' property. More specifically, they argued that the court gave too much significance to a surveyor note that the fence in question was "an old down fence line with steel posts," and that the court disregarded certain evidence that, in the Plaintiffs' view, showed that the Olmsteds had in fact maintained the fence. We discuss their argument in greater detail below.

¶8 The circuit court scheduled briefing on the reconsideration motion and held a hearing on June 23, 2025. At the conclusion of the hearing, the circuit court denied the motion and directed the Crases' attorney to prepare a draft order. The Crases submitted the draft order for the court's signature, and the court signed and entered the order on July 11, 2025.[3] We refer to this order as the "order denying reconsideration."

¶9 The Plaintiffs filed a notice of appeal on August 21, 2025. After reviewing the appellate record, we questioned whether this court has jurisdiction to review the final judgment and the order denying reconsideration. See *Carla B.*

---

[2] The bench trial was conducted by the Honorable Mark A. Frankel, Reserve Judge, who gave his oral ruling at its conclusion. The Honorable W. Andrew Voight entered the final judgment.

[3] The hearing on the motion for reconsideration was conducted by Reserve Judge Frankel, who orally denied the motion at the conclusion of the hearing. Judge Voight entered the order denying reconsideration.

*v. Timothy N.*, 228 Wis. 2d 695, 698, 598 N.W.2d 924 (Ct. App. 1999) (we have an independent duty to determine our own appellate jurisdiction). We ordered the parties to address this court's jurisdiction in their appellate briefs.

## DISCUSSION

¶10 On appeal, the Plaintiffs attempt to challenge determinations made in the final judgment and the order denying reconsideration. The Crases take the position that we do not have jurisdiction over any part of this appeal. We consider our jurisdiction over the final judgment and the order denying reconsideration in turn.

## I. The Final Judgment

¶11 The filing of a timely notice of appeal is necessary to give this court jurisdiction to review any judgment or order that was entered in a circuit court case. WIS. STAT. § 809.10(1)(e). The deadline to appeal a final judgment is generally controlled by WIS. STAT. § 808.04(1), which provides a 45- or 90-day timeline to appeal that starts running on the date the judgment is entered. In a civil case such as this in which no notice of entry of judgment is given, a party would typically have 90 days from the date the judgment was entered to file a notice of appeal pursuant to § 809.10(1)(e).[4]

¶12 There is a separate statutory provision, WIS. STAT. § 805.17(3), that will in some cases extend the deadline to appeal a final judgment beyond the 45-

---

[4] The 90-day timeline would be shortened under some circumstances to 45 days if "written notice of the entry of a final judgment or order is given within 21 days of the final judgment or order as provided in [WIS. STAT. §] 806.06(5)." WIS. STAT. § 808.04(1).

or 90-day timeline set by WIS. STAT. § 808.04(1). More specifically, if a party files a motion to reconsider the judgment pursuant to § 805.17(3), as the Plaintiffs did here, § 805.17(3) delays the commencement of the timeline to appeal the judgment for a period of time to allow the circuit court to resolve the reconsideration motion. *See* ***Continental Cas. Co. v. Milwaukee Metro. Sewerage Dist.***, 175 Wis. 2d 527, 535, 499 N.W.2d 282 (Ct. App. 1993); ***Salzman v. DNR***, 168 Wis. 2d 523, 530-31, 484 N.W.2d 337 (Ct. App. 1992).[5]

¶13 However, and importantly, WIS. STAT. § 805.17(3) does not indefinitely delay the appeal deadline while the circuit court considers whether reconsideration is warranted. *See* ***Kraemer v. Traun***, 2025 WI App 8, ¶¶19-21, 415 Wis. 2d 125, 17 N.W.3d 49 (2024) (interpreting § 805.17(3)). As we explained in ***Kraemer***, the statute can delay the commencement of the appeal timeline for no more than 90 days. *Id.*, ¶20. Our determination in ***Kraemer*** was based on the unambiguous language in § 805.17(3), which provides in relevant part:

> Upon its own motion or the motion of a party made not later than 20 days after entry of judgment, the court may amend its findings or conclusions or make additional findings or conclusions and may amend the judgment accordingly.… If the court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the court denies a motion …, the

---

[5] Although not directly material to the issues we decide here, we emphasize that WIS. STAT. § 805.17(3) applies only when there is a motion for reconsideration of a final order or judgment following a trial to the court. The statute does not apply to delay the commencement of appellate timelines in other instances. *See* ***Continental Cas. Co. v. Milwaukee Metro. Sewerage Dist.***, 175 Wis. 2d 527, 529, 533, 499 N.W.2d 282 (Ct. App. 1993) (holding that § 805.17(3) does not apply when a motion for reconsideration was made in the summary judgment context); ***Highland Manor Assocs. v. Bast***, 2003 WI 152, ¶26, 268 Wis. 2d 1, 672 N.W.2d 709 (although § 805.17(3) allows a tenant to seek reconsideration of an eviction judgment, it does not extend the 15-day deadline to appeal the eviction judgment).

time for initiating an appeal from the judgment commences when the court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. *If within 90 days after entry of judgment the court does not decide a motion filed under this subsection … the motion is considered denied and the time for initiating an appeal from the judgment commences 90 days after entry of judgment.*

(Emphasis added.)

¶14  Thus, the rule is that "the time for initiating an appeal" of the final judgment "commences" when one of the following occurs, whichever occurs first: the court decides the reconsideration motion (either by entering an amended judgment or by denying the motion, whether on the record or by entering an order); or the passage of 90 days after the entry of final judgment if the court has not decided the motion by that date. *Kraemer*, 415 Wis. 2d 125, ¶¶20-21 (citing WIS. STAT. § 805.17(3)). If the reconsideration motion is not decided within 90 days of the entry of final judgment, it is "considered denied" on the 90th day, and a would-be appellant has at most an additional 90 days, but no longer, to file a notice of appeal of the final judgment.[6] *Id.*, ¶¶22, 28; § 805.17(3).

¶15  As applied here, the circuit court signed and entered the final judgment on February 20, 2025. The judgment was final because it disposed of all of the claims in the litigation. *See* WIS. STAT. § 808.03(1); *Wambolt v. West Bend Mut. Ins. Co.*, 2007 WI 35, ¶15, 299 Wis. 2d 723, 728 N.W.2d 670; *Morway v. Morway*, 2025 WI 3, ¶18, 414 Wis. 2d 378, 15 N.W.3d 886.

---

[6] We say "at most" because, as noted, the 90-day timeline to appeal can be shortened to 45 days under some circumstances. *See supra* note 4.

7

¶16     Pursuant to WIS. STAT. § 808.04(1), the Plaintiffs would have 90 days to appeal the final judgment, before taking any delay imposed by WIS. STAT. § 805.17(3) into account.   Because the Plaintiffs moved for reconsideration pursuant to § 805.17(3), their timely motion delayed the commencement of the appeal timeline.[7]  When the circuit court did not decide the reconsideration motion by May 21 (that is, 90 days after the February 20 judgment), the motion was considered denied for purposes of computing the deadline to appeal the final judgment. *See* § 805.17(3); *Kraemer*, 415 Wis. 2d 125, ¶28.  The Plaintiffs had an additional 90 days, until August 19, to file a timely notice of appeal of the final judgment.  The Plaintiffs filed their notice of appeal on August 21, which was two days late.

¶17     The Plaintiffs argue that, even though there can be no doubt that the final judgment was actually entered on February 20, 2025, we should treat it as if it was entered several days later.   That is so, they argue, because the Crases submitted a proposed final judgment to the circuit court on February 19, pursuant to the so-called "five-day rule."   As we understand it, the five-day rule is a local rule in some circuit courts, and pursuant to that rule a party can submit a proposed order for the court's signature without obtaining the opposing party's approval of the order's form.   When a proposed order is submitted pursuant to the five-day rule, it is customary for courts to wait five days to allow the opposing party to

---

[7] The Crases argue that the Ewings cannot take advantage of the provisions in WIS. STAT. § 805.17(3) because the motion for reconsideration raised issues that pertained only to the Olmsteds' claim.  We need not decide this issue because we conclude that the notice of appeal that was jointly filed by the Olmsteds and the Ewings was untimely as to the final judgment.  Therefore, any separate determination about the Ewings is not dispositive. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (Ct. App. 2013) (appellate courts need not address every issue raised by the parties when one issue is dispositive).

object to the form of the order, and then to sign the proposed order after five days if no objection has been received.

¶18 According to the Plaintiffs, the circuit court's failure to wait five days to sign the proposed order that was submitted on February 19, 2025, was a "procedural irregularity" and an "ambiguity" that we should construe in favor of preserving appellate jurisdiction over the final judgment. *See* ***Wambolt***, 299 Wis. 2d 723, ¶4 (stating that "appellate courts should liberally construe ambiguities to preserve the right of appeal"). This argument about the five-day rule is unavailing for at least two reasons.

¶19 First, the factual premise of the argument is incorrect—contrary to the Plaintiffs' assertions, the order that the circuit court entered on February 20, 2025, was not submitted pursuant to the five-day rule. It is true that the Crases' attorney submitted a proposed order to the court on February 19, and the order was accompanied by a letter asking the court to sign the proposed order if the Plaintiffs' attorney did not object to its form within five days. However, the following day, counsel resubmitted the proposed order, and this time the order expressly bore the signature of the Plaintiffs' attorney who "approved" the order "as to form." Accordingly, there was no longer any need for the court to wait five days to see if the Plaintiffs' attorney would object to the form of the order.

¶20 Second, legally speaking, the relevant appeal timelines under WIS. STAT. §§ 808.04(1) and 805.17(3) run from "entry of the judgment." And here, there is nothing ambiguous about the fact that the final judgment was entered on February 20, 2025. The Plaintiffs provide no legal authority to support the premise that any "procedural irregularity" such as a circuit court's failure to follow

a local custom or rule is an "ambiguity" that would allow us to start counting from a different day based on a hypothetical sequence of events that did not occur.

¶21  In the alternative, the Plaintiffs make a policy-based argument that is contrary to express language in WIS. STAT. § 805.17(3).  That is, they argue that "[t]he 90-day outer limit" set forth by § 805.17(3) should only apply in instances in which "the court simply does nothing with the motion to reconsider within 90 days of the judgment."  Here, they argue, we should not strictly apply the deadline from § 805.17(3) because the circuit court "made a decision to set a briefing schedule and hold a hearing," all "within 90 days of the judgment."

¶22  In making this argument, the Plaintiffs ignore that we faced an almost identical factual scenario in *Kraemer* and nevertheless determined that the deadline set forth in WIS. STAT. § 805.17(3) is "rigid."  *See Kraemer*, 415 Wis. 2d 125, ¶29.  As we stated there and repeat here, we acknowledge that the 90-day outer limit that is set forth in § 805.17(3) "can be a trap for the unwary" and, "at times, may result in harsh consequences" for would-be appellants who are not careful about parsing statutory language and monitoring their appeal deadlines. *Id.*, ¶29.  However, the language of § 805.17(3) cannot reasonably be construed in any other way, and we are not free to disregard unambiguous jurisdictional deadlines even if one might prefer a different policy result in the absence of the statute.

¶23  Accordingly, we conclude that we do not have appellate jurisdiction over the final judgment.

## II. The Order Denying Reconsideration

¶24  Turning to the order denying reconsideration, there can be no doubt that the Plaintiffs' notice of appeal is timely as to that order. The circuit court entered the order on July 11, 2025; WIS. STAT. § 808.04(1) provides a 90-day deadline to appeal in civil cases like this in which no notice of entry of judgment was given; and the Plaintiffs filed their notice of appeal on August 21, which was well within the 90-day deadline.

¶25  However, there is a separate jurisdictional rule established by Wisconsin case law that specifically pertains to orders that resolve a motion to reconsider a previously entered judgment that was final for purposes of appeal. *See Ver Hagen v. Gibbons*, 55 Wis. 2d 21, 26, 197 N.W.2d 752 (1972); *Silverton Enters., Inc. v. General Cas. Co. of Wis.*, 143 Wis. 2d 661, 665, 422 N.W.2d 154 (Ct. App. 1988); *see also Marsh v. City of Milwaukee*, 104 Wis. 2d 44, 45, 310 N.W.2d 615 (1981). The rule from those cases is that "[n]o right of appeal exists from an order denying a motion to reconsider which presents the same issues as those determined in the order or judgment sought to be reconsidered." *Silverton*, 143 Wis. 2d at 665. "The policy underlying the rule is to prevent a party from reviving an expired appeal deadline by filing a motion for reconsideration that raises the same issues that were decided in a final judgment or order." *Kraemer*, 415 Wis. 2d 125, ¶42. Accordingly, our jurisdiction over the appeal of the order denying reconsideration is governed by the rule from *Ver Hagen* and *Silverton*.

¶26  We pause to emphasize an important point. There would be no need to address whether the order denying reconsideration is appealable in accordance with the rule from *Ver Hagen* and *Silverton* if the Plaintiffs had timely appealed the final judgment. *See Silverton*, 143 Wis. 2d at 665 (the rule is animated by the

concern "that a motion for reconsideration should not be used as a ploy to extend the time to appeal from [a final] order or judgment when the time to appeal [that order or judgment] had expired"). That is, if the Plaintiffs had timely appealed the final judgment and the order denying reconsideration alike, there would be no barrier to our appellate jurisdiction, and we would generally review the merits of any challenged determination in either decision based on the applicable legal standards. However, because the Plaintiffs did not timely appeal the final judgment, we must apply *Ver Hagen* and *Silverton* to resolve the threshold question of whether we have appellate jurisdiction to review the merits of any issues that the circuit court addressed in its order denying reconsideration.

¶27 By its terms, the rule from *Ver Hagen* and *Silverton* pertains to those issues for which the circuit court denied reconsideration. *Kraemer*, 415 Wis. 2d 125, ¶44. For any such issues, our case law directs us to apply the "new issues test," which requires us to compare the issues that were raised in the motion for reconsideration with the issues that the court disposed of as part of its original decision. *Harris v. Reivitz*, 142 Wis. 2d 82, 87-88, 417 N.W.2d 50 (Ct. App. 1987) (citing *Ver Hagen*, 55 Wis. 2d at 25).

¶28 Here, the circuit court denied the Plaintiffs' reconsideration motion in its entirety. That motion was primarily focused on the factual findings that the court made as part of its final judgment with respect to the Olmsteds' fence. Specifically, in support of its original decision to dismiss the adverse possession claim, the court determined that the fence that supposedly marked the boundary between the Olmsted and Crase parcels was "an old, downed fence with steel posts," that it was "largely down on the ground" and "in a seriously dilapidated condition," and that it had "not [been] maintained in any reasonable fashion by the Olmsteds." The court also found that "there's no indication that Mr. Crase caused

12

the fence to come down other than pure speculation." The court reasoned that an "enclosure needs to be continuous, as well as open and obvious" to support an adverse possession claim, and the court determined that the existence of the old downed fence was inadequate to "prove the statutory requirements of open, notorious, and obvious use."

¶29 The Plaintiffs' motion for reconsideration took aim at the above-described findings and, ultimately, at the circuit court's legal conclusion about adverse possession. Specifically with respect to the facts, the motion challenged the court's finding that the fence was "an old down fence line" and its finding that the Olmsteds had not maintained the fence. According to the Plaintiffs, the court disregarded certain evidence that would support contrary findings that the Olmsteds had in fact maintained the fence and it was in good shape until John Crase removed it. The motion went on to identify the trial evidence that, in the Plaintiffs' view, the circuit court should have credited. Had the court credited this evidence, the Plaintiffs argued, the court would have determined that the fence had been in existence for long enough to establish adverse possession.

¶30 But plainly, these issues were addressed during the bench trial and in the circuit court's final judgment. Indeed, it is no exaggeration to say that the condition of the Olmsteds' fence, the efforts by the Olmsteds to maintain it, and whether John Crase had altered that fence prior to the survey were among the most prominent topics addressed by the trial evidence and argument. The evidence on these topics was discussed at length during the attorneys' closing arguments. And there can be no doubt that the court actually decided these issues in its final judgment.

¶31     The Plaintiffs nevertheless argue that, under the "liberal application" of the new issues test that is discussed in *Harris*, we should conclude that the reconsideration motion presented new issues for two reasons. First, they argue, the reconsideration motion cited a "body of law concerning fences and assumptions that are to be made based on this body of law," and the circuit court did not address this body of law in its original decision. Second, they contend that the court denied them an opportunity to give a rebuttal in response to the Crases' closing argument. Neither argument is persuasive.

¶32     We begin with the Plaintiffs' argument about the body of law concerning fences. In the reconsideration motion, the Plaintiffs cited WIS. STAT. § 893.25(2)(b)1., which addresses the role that "substantial enclosure[s]" can play in adverse possession claims. The motion also cited *Northwoods Development Corp. v. Klement*, 24 Wis.2d 387, 129 N.W.2d 121 (1964), which addresses "the general rule" that, if a property owner "has exercised exclusive and open possession for twenty years or more up to a fence line under the assumption that the fence marked the true boundary of his premise, [the property owner] has thereby, acquired title by adverse possession to any land intervening between his own premises and the fence." *Id.* at 392. However, the circuit court appears to have been aware of the statutes regarding enclosures and the case law regarding fences when it issued its final judgment following the trial. Indeed, the court commented on the role that "enclosures" play in adverse possession cases, and there is no indication that the court made its decision based on a failure to understand or apply the law regarding fences. Instead, the court's original decision was grounded on its factual findings about the condition of the fence and its finding that the fence was down and did not amount to a substantial enclosure. The Plaintiffs disagree with the court's findings and conclusion and expressed

their disagreement in the reconsideration motion, but that does not mean that the motion presented new issues for purposes of the rule from *Ver Hagen* and *Silverton*.

¶33    Turning to the lack of a rebuttal, that adds nothing to the mix. Whether or not the Plaintiffs would have presented the issues they raised in their reconsideration motion in a rebuttal had they been given the opportunity, the issues they raised in their motion were not new.

¶34    Finally, the Plaintiffs' citation to *Harris* in support of a liberal application of the new issues test does not move the needle.  In that case, the appellant, Harris, was a prisoner who had challenged the application of an administrative rule that governed inmate accounts.  *Harris*, 142 Wis. 2d at 87-88. The circuit court dismissed the complaint on the ground that Harris had not exhausted the administrative remedies that were available to him through the inmate complaint review system.  *Id.* at 88.  Harris moved for reconsideration and argued that the exhaustion of remedies doctrine was inapplicable for two reasons that the court did not consider as part of its dismissal order: the exhaustion doctrine could not be applied to an action for declaratory relief; and the doctrine could not be applied because the inmate complaint review system had not been certified by the United States Attorney General.  *Id.* at 89.  On appeal, we acknowledged that the issues Harris raised in his reconsideration motion "relate[d] to" the exhaustion of remedies requirement, which was "the ground the [circuit] court relied on when dismissing [Harris's] complaint."  *Id.*  But we further observed that the issues Harris raised were "new aspects of the [administrative remedies] doctrine" that the circuit court did not address in its original decision; that the court "impliedly recognized that neither issue had been previously raised"; and that in its order denying reconsideration, the court "examined each [of the new

issues] in some detail." *Id.* at 88-89. Giving the new issues test a liberal construction, we determined that the order denying reconsideration addressed new issues that were not disposed of in the original dismissal order. *Id.*

¶35 The same cannot be said here. As discussed, the Plaintiffs' reconsideration motion took issue with the circuit court's factual findings and legal conclusions with respect to the Olmsted's fence, but it did not raise any new issues that the court had not disposed of in the lead up to the final judgment. Nor can the motion reasonably be construed as raising "new aspects" of legal doctrine that the court had not previously considered, as was the case in *Harris*. Accordingly, applying the rule from *Ver Hagen* and *Silverton*, we conclude that we lack appellate jurisdiction to review the order denying reconsideration.

*By the Court.—*Appeal dismissed.

Recommended for publication in the official reports.